LACON <em>against</em> DAVENPORT.

*A* and *B*, having been the owners, as partners, of the works used by them in a manufacturing establishment, including the land, buildings, fixtures, machinery and tools, dissolved their partnership, in *June,* 1834. Each continued to be the equitable owner of an undivided moiety of such works ; but the legal title thereto was vested in *B*, and remained in him until *October,* 1839; when *B* conveyed, by a quit-claim deed, an undivided moiety thereof to *A ;* who, immediately afterwards, mortgaged his interest to *C ;* and this mortgage is still outstanding. In *September,* 1840, *D* and *E*, creditors of *A*, having obtained judgments against him, had their executions levied on his interest in such works, certain proportions of which were duly set off to them.

*Fairfield,*
June, 1844.

Beers
*v.*
St. John.

From the dissolution of the partnership in *June,* 1834, to *April,* 1842, *B* let out the works, and received the rents and profits, and accounted for a part thereof. During this period, *B* also had in his hands certain accounts in favour of the late partnership against sundry persons, which he held for the purpose of collecting the sums due thereon, a part of which he had in fact collected. In an action of account, brought by *A* against *B,* calling for *B's* account from *June,* 1834, to *April,* 1842, to which *B* pleaded *never bailiff and receiver,* it was held, 1. that this action would lie for the rents and profits accruing between the date of *B's* quit-claim deed to *A* and the levy of the executions of *D* and *E* ; 2. that *A's* mortgage to *C* did not affect *A's* rights, as owner of a moiety of the property ; 3. that *A* was not precluded from sustaining this action, because he had only an equitable title ; or because, after the levy of the executions, there were more than two co-tenants ; or because the proof did not show, that *B* was the bailiff of *A,* during the whole of the time alleged ; 4. that it was not a ground of defeating the action, that the declaration called for an account of a part only of the property, that belonged to such works ; or because the defendant was called upon, in several counts, to account for as many distinct trusts, when there was in fact but one trust.

THIS was an action of account. The declaration contained several counts.

In the first, the plaintiff called upon the defendant to render his reasonable account for the time he was the bailiff of the plaintiff ; alleging, that from the 1st of *June,* 1834, until the 1st of *April,* 1842, the defendant was bailiff of the plaintiff, and as such had the possession, care and management of an undivided moiety of certain mills and lands in *Stamford,* known as the *Roxbury* works, and of all the tools, machinery and fixtures thereunto belonging, and the lands thereto attached, with power to occupy and lease the same, and to receive the rents and profits of said mills, machinery, fixtures and lands, and to render his reasonable account thereof to the plaintiff, when thereto afterwards requested.

In the second count, it was alleged, that from the 1st of *June,* 1834, to the 1st of *April,* 1842, the defendant, as bailiff of the plaintiff, had the possession of an undivided moiety of a large quantity of machinery, tools and fixtures, of the value of 5000 dollars, intended for and appropriate to the manufacture of rolled iron, which the defendant and plaintiff owned together as tenants in common, and the defendant had possession of the other moiety in his own right ; and during all that time, the defendant had the care and management of said machinery, tools and fixtures, to use, let and hire for the profit and advantage of the plaintiff and defendant, and to render

his reasonable account thereof, to the plaintiff, when afterwards thereto requested.

In the third count, it was alleged, that from the 1st of *June,* 1834, to the 1st of *April,* 1842, the defendant, as bailiff of the plaintiff, had the possession, care and management of a large quantity of the machinery, tools and fixtures, and iron-rolls, of the value of 5000 dollars, a description of which, as far as they could be given, was contained in a schedule annexed, but of which, and other articles not therein contained, an account could not be particularly given by the plaintiff; which the plaintiff and defendant owned together, as tenants in common, the defendant having the possession and care of one moiety thereof, in his own right; and the defendant, as such bailiff, had the possession and care of such machinery, tools and fixtures, for the purpose of selling and disposing of the same, to the best advantage, and for the joint benefit of the plaintiff and defendant, and to render to the plaintiff his reasonable account thereof, when afterwards thereto requested.

In the fourth count, it was alleged, that from the 1st of *June,* 1834, to the 1st of *April,* 1842, the defendant was the bailiff of the plaintiff, and as such bailiff, had the care and management of sundry accounts, due from divers persons to the plaintiff and defendant, as partners, and tenants in common; and had the possession of one undivided moiety thereof belonging to the plaintiff, and of the other undivided moiety in his own right, for the purpose of collecting and receiving said accounts, which were of the value of 2000 dollars; which accounts, with the books, were with the defendant, and could not be particularly given; and to render to the plaintiff his reasonable account of the sums collected and received thereon, when afterwards thereunto requested.

The defendant pleaded, that he was *never the bailiff of the plaintiff,* as alleged in the declaration; and on this issue, the cause was tried, at *Danbury, October* term, 1843, before *Hinman,* J.

On the trial, the plaintiff claimed to have proved, that from *October,* 1826, until sometime in the year 1834, he and the defendant were partners in the manufacture of rolled-iron, and other manufactures of iron, at the *Roxbury* works, mentioned in the declaration, and as such partners, used such works in their business; that this partnership was dissolved

*Fairfield,*
*June, 1844.*

Lacon
*v.*
Davenport.

in 1834 ; that said works, including land, mills, buildings and most of the fixtures, machinery and tools mentioned in the declaration, were purchased by them, in 1826 ; that other portions of the machinery, fixtures and tools, used by them in their business, were purchased by them, during the existence of the partnership, out of the joint funds of the partners ; that the legal title to said works, embracing the land, mills, buildings, fixtures, machinery and tools, was conveyed to and vested in the defendant, and suffered to remain in him, until the 17th of *October,* 1839 ; the equitable title and ownership of one moiety thereof, during this period, being in the plaintiff ; that on the day last-mentioned, the defendant executed and gave to the plaintiff a quit-claim deed of an undivided moiety of said works, including the land, mills, buildings, fixtures, machinery and tools, thereby conveying the legal title to the undivided moiety thereof to the plaintiff ; that the reason why the legal title to the whole of the premises, was originally vested in the defendant, and suffered thus to remain in him, was, that the plaintiff was, at that time, an alien, and incapable of holding real estate in this state ; that from the time of the dissolution of the partnership until the 1st of *April,* 1842, the defendant had let and demised the *Roxbury* works to the firm of *J. D. Weeks & Co.,* and had received all the rents and profits thereof, and had accounted for and paid to the plaintiff a part, and a part only, of such rents and profits, and had sold a portion of said tools and machinery, and some other machinery belonging to them, which had never been a part of the *Roxbury* works : and the plaintiff claimed to recover therefor, under the three first counts of his declaration.

The plaintiff also claimed to have proved, that the accounts mentioned in the fourth count, were some of the accounts due to the partnership from individuals ; that the defendant had them to collect, and to account to the plaintiff for his proportion ; that the defendant had collected a part of them ; and that the plaintiff, therefore, was entitled to a verdict on this count.

It did not appear, that a final settlement of the partnership transactions had ever been made ; but it appeared, that a settlement of a principal part thereof had been made, after the dissolution ; and it also appeared, that *J. S.* had a claim, which the defendant claimed was outstanding against the

firm, and ought to be paid out of the avails of the accounts he had collected.

The defendant claimed to have proved, that on the 1st of *April,* 1837, *James J. King* caused all the right and title, which the plaintiff, at that time, had in the *Roxbury* works, to be attached, in a suit brought by him against the plaintiff; that after the decease of said *King,* *J. A. Davenport,* his administrator, as such, recovered judgment in said suit against the plaintiff, before the *Fairfield* county court, *August* term, 1840 ; and that, on the 27th of *September,* 1840, said *J. A. Davenport* caused an execution, issued on such judgment, to be levied on all the right and title of the plaintiff in and to the *Roxbury* works, by virtue whereof $\frac{10}{370}, \frac{382}{000}$ths in common and undivided of the plaintiff's said right and title, were duly appraised and set off in satisfaction of said execution ; that on the 5th of *May,* 1837, *William H. Meade* caused all the right and title, which the plaintiff then had in the *Roxbury* works, to be attached, in a suit by him brought against the plaintiff; and that said *Meade,* at the term of the county court for *Fairfield* county, in *August,* 1837, recovered judgment therein against the plaintiff, and on the 29th of *September,* 1840, caused an execution, issued on such judgment, to be duly levied on all the right and title of the plaintiff in the *Roxbury* works, which had been so attached, and by virtue thereof, $\frac{195}{353}, \frac{763}{118}$ths in common and undivided, were duly appraised and set off to said *Meade;* and that said *Davenport* and *Meade* had, ever since the levies of said executions, owned, and still own, the estate so set off to them respectively.

The plaintiff denied the title of *Davenport* and *Meade,* claiming that they acquired no lien on the premises, by virtue of their attachments, and no title thereto, by the levies of their executions.

It was proved by the defendant, and not denied, that the plaintiff, immediately upon the execution of the quit-claim deed of *October* 17th, 1839, executed and gave to *T. B. Butler,* Esq. in trust for *John Lacon,* a mortgage deed of all the right and title in the *Roxbury* works, conveyed to him, by such quit-claim deed; and that said *Butler* has ever since held, and still holds, the title so conveyed to him, for the purposes of the mortgage.

The defendants thereupon claimed, and requested the court

to instruct the jury, that the plaintiff could not maintain his action for any letting or demising of the *Roxbury* works, or any part thereof, or for any reception of the rents and profits thereof, during the time that the defendant had the legal title of the whole thereof, nor during the time that *Butler* had the title, so conveyed to him, by said mortgage deed: and that he could not maintain his action on either of the three first counts of the declaration, without proof that he was owner of one moiety of the property therein specified; that if he owned less than such moiety, he could not recover on either of those counts; and that he could not recover on them, for any time during which he was not the owner of such moiety, and consequently, for no time after *Davenport* and *Meade* respectively acquired their interest in the premises, by virtue of the levy of their executions; and that the defendant could not be liable, except upon a proceeding in which *Davenport* and *Meade* should be made parties; and that the plaintiff's only remedy was in chancery: that neither the second nor the third count could be supported, because those counts embraced a part only of the *Roxbury* works, and called for an account for such part only, distinct from the rents of the works, unless it appeared, that such part was let and demised separately from the rest: and that, unless it appeared that all the accounts of the partnership, except the accounts mentioned in the fourth count, had been adjusted and settled, and especially, if it appeared, that there was outstanding any debt due from the partnership, the fourth count could not be sustained.

The court charged the jury, that in order to recover upon any one or more of the counts in the declaration, the plaintiff must prove to their satisfaction all the allegations made therein; that if he had failed to do this upon any one or more of the counts, the defendant was entitled to a verdict upon the count or counts which the plaintiff had so failed to prove: that he must prove, that he was the owner of one moiety of the property, as alleged in the declaration, and that the defendant was the bailiff thereof; but that it was not necessary to prove the defendant to have been his bailiff of all the property mentioned in any one count, or that the plaintiff was owner of one moiety of all such property; but it was sufficient to enable the plaintiff to recover upon any count, if,

at any time between the 1st of *June*, 1834, and the 1st of *April*, 1842, he and the defendant were joint owners, as tenants in common, of some portion of the property mentioned therein, the plaintiff owning one moiety thereof, and the defendant being bailiff thereof, provided the other allegations in those counts were proved: that the mortgage to *Butler*, though a valid incumbrance on the plaintiff's moiety of the *Roxbury* works, would not so far alter the rights of the plaintiff, as a joint owner and tenant in common thereof, as to prevent a recovery by him, in this suit : that the plaintiff could not recover for any time after the levy of the executions of *Davenport* and *Meade*, as account would not lie between tenants in common, for the rents and profits of the common estate, where there were more than two co-tenants. But the court told the jury, that this was of no importance upon the issue in this case, provided they should find, that after the 17th of *October*, 1839, the date of the quit-claim deed from the plaintiff to the defendant, and until the levy of the *Davenport* execution, the plaintiff and defendant were tenants in common of said works, each owning an equal moiety thereof, and should also find, that the defendant, during this period, had rented the premises and received the rents thereof, as alleged in the declaration, as bailiff of the plaintiff of his share thereof. And the court instructed the jury, that if they should not find these facts for the plaintiff, the defendant would be entitled to a verdict upon the first count. Upon the third count, the court charged the jury in conformity to the defendant's claims, that the plaintiff and defendant, being tenants in common of the personal estate mentioned in that count, the defendant had no right to sell the plaintiff's interest therein, unless authorized by the plaintiff so to do ; and that unless they should find an agreement between the parties, by which the defendant was authorized to sell the property and account to the plaintiff for his portion of the avails, and they should also find, that he had so sold in pursuance thereof, the defendant was entitled to a verdict upon that count. Upon the fourth count, the court refused to charge the jury as requested by the defendant, but charged them in conformity to the claim of the plaintiff on that count.

The jury returned a verdict in favour of the plaintiff upon all the counts ; and the defendant moved for a new trial for a misdirection.

*Fairfield,*
June, 1844.

Lacon
*v.*
Davenport.

*Hawley,* in support of the motion, contended, 1. That the plaintiff's only remedy is in chancery, by bill, stating the whole case, and making the defendant, *Butler,* and the execution creditors, all parties, so as to settle all the matters in controversy at once.    The plaintiff seeks to recover for all the time from 1834 to 1842, claiming one continued occupation by the defendant and trust in him, during the whole of that period. From 1834 to *October,* 1837, the plaintiff had an *equitable* title only ; immediately on getting the *legal* title, he mortgaged to *Butler ;* and shortly afterwards, *Davenport* and *Meade* took all the remaining interest of the plaintiff, by their executions. Now, the plaintiff's remedy is in chancery only, first, because his claim is founded on an *equitable* title only.    Secondly, if the plaintiff can recover here, then that which is in truth one cause of action only, may be split up into several, *viz.* one for the time before *October,* 1837 ; one from that time until the levy of the executions ; and one for the time thenceforward. Thirdly, the safety of the defendant requires the course suggested.    Fourthly, in no other way can the accounts be properly adjusted.    2 *Sw. Dig.* 223.    *Smith* v. *Brush,* 11 *Conn. R.* 359. 366.

2. That the court erred in not instructing the jury, that there could be no recovery on a count calling for an account of *part* only of the property.    It was all one entire trust, embracing all the property.    The jury must have understood, that they might find for the plaintiff, as they did, on all the counts, though each embraced only *part* of the trust.    The effect of the finding is, that the defendant must, before the auditors, account for so many *distinct* trusts, though in fact there was but one.    The result of such a finding might, and probably would, be very different from that of one entire account.

3. That the charge is erroneous, in stating to the jury that they might find for the plaintiff, if they should find the defendant to have been bailiff *during any portion of the time* laid.

4. That the charge is also erroneous in relation to the fourth count ; for there can be no account taken of *partnership* dealings, but such as embraces all, and is final.    *Smith* v. *Brush,* 11 *Conn. R.* 359.    It is shown, that the plaintiff and defendant had been partners ; that these accounts accrued

while they were such ; that there had been no settlement or rest ; that there was at least one outstanding claim ; and this count calls for a settlement of these particular items only, and not of the whole account.

*Bissell* and *Butler*, contra, contended, 1. That the defendant is liable to account to the plaintiff for the time during which the plaintiff's moiety of the property held in common, was under a mortgage. To determine this point, it is only necessary to consider the interest and rights of the mortgagor and mortgagee in the property mortgaged. In the first place, the mortgagor is the owner of the land, and is to be regarded as such, to every purpose, except the right of possession. *Barkhamsted* v. *Farmington*, 2 *Conn. R.* 600. In this case, it does not appear, that this right was asserted, by the mortgagee ; or even, that the *law day* had expired. Secondly, the mortgagee has a lien upon the property mortgaged, equivalent only to a chattel interest. *Toby* v. *Reed*, 9 *Conn. R.* 216. *Chamberlain* v. *Thompson*, 10 *Conn. R.* 244.

2. That the charge of the court in regard to the claims of the defendant, on the second and third counts, is unexceptionable. Examine what those counts are, and wherein they differ from the first. The first count calls for an account of the rents and profits of the *Roxbury* works and the machinery *thereunto belonging*. The second count calls for an account of certain machinery, tools and fixtures belonging to the plaintiff and defendant jointly, and which are not averred to belong to the *Roxbury* works, of which the defendant had the possession, for the purpose of leasing, &c. The third count differs from the second in this only, that it is here averred, that the defendant received the machinery, &c. to sell on joint account. It does not appear from the motion, that any part of the articles embraced in these counts ever belonged to the *Roxbury* works. The claim of the plaintiff, on the contrary, was, that they never did belong to those works. There is, therefore, nothing appearing on the motion, which lays a foundation for the objection to these counts. But secondly, if there be any thing in the objection, it was so disposed of, by the court, as that the *defendant* has no cause of

complaint. The charge on this count was in his favour, in conformity with his claim.

3. That the charge in relation to the claims of the defendant under the fourth count, is equally unexceptionable. The claim in respect to the accounts which went into the defendant's hands, is, that he is under no liability to account for these, until every thing else is settled, and every debt paid. In reply to this claim, it may be asked, whose duty was it to settle the accounts, and pay the debts? All the assets of the partnership were in the hands of the defendant. The neglect to settle and pay the debts, was *his* neglect. And is this neglect now to be urged as a reason why he should not account?

4. That all the objections to the second, third and fourth counts, are *premature.* The issue, and the only issue, for the jury to pass upon, was, whether the defendant, as the bailiff and receiver of the plaintiff, was liable to account. The *extent* of that liability is to be settled by the auditors, or upon the coming in of their report. If the court can see, that upon the facts stated and proved to the jury, the defendant ought to account, no new trial will be granted.

HINMAN, J. Several supposed errors of the judge, both in charging the jury and in omitting to charge them as requested, have been specified in argument. They are, however, so nearly assimilated to each other, as to make it somewhat inconvenient to notice them all separately; and as it is also believed to be unnecessary to distinguish between them, an answer to the whole will be given, without much regard to order, or any division of the subject into separate heads.

After the deed of the 17th of *October,* 1839, the plaintiff and defendant became tenants in common of the real estate mentioned in the first count of the declaration; and the defendant, having had the possession of the whole of it, from 1834 to 1842, was, by virtue of our statute, (*tit.* Account, *sec.* 4.) liable to be called upon, in this form of action, to account for the plaintiff's share of the rents and profits, accruing after the date of said deed, and previous to the levy of the *Davenport* and *Meade* executions. The mortgage to Mr. *Butler* did not affect the plaintiff's rights, as owner of a moiety of

*Fairfield,*
June, 1844.

Lacon
*v.*
Davenport.

the property. *Butler* had a lien upon the property, for the security of his debt ; but being out of possession, he had no right to the rents and profits of the estate ; and before foreclosure, he was, in no respect, to be treated as owner. The defendant was not accountable to him, but to the plaintiff alone, as the legal owner. The principle, that the mortgagee has only a chattel interest in the mortgaged estate, but that the mortgagor in possession is the real owner, has been so often decided, by this court, and has become so familiar, that a reference to the cases is unnecessary. It is enough to say, that it was expressly so decided, at the last term of this court, in the case of *Cooper* v. *Davis,* 15 *Conn. R.* 556.

But, it is said, that, because it appears that previous to the plaintiff's deed of the 17th of *October*, 1839, the plaintiff had only an equitable title, and that subsequent to the levy of the *Davenport* and *Meade* executions, there were more than two co-tenants ; and, as there was but one continued occupancy, by the defendant, of the premises; he ought to be called upon, in one action only, to account for the whole time he was the receiver of the rents arising from the estate. He, therefore, claims the plaintiff's only remedy is in chancery.

It is doubtless true, that if the plaintiff grounds his claim to recover on his co-tenancy alone, he can not, before the auditors, recover any thing for the time when there were more than two co-tenants of the property ; and therefore, he cannot recover for the rent accruing after the levy of the two executions: and perhaps it may be true also, that merely as co-tenant, he would be precluded from recovering any part of the rent, while he had only an equitable title ; and therefore, he could not recover for the rent accruing previous to the 17th of *October*, 1839, when he received his deed. But if, during these periods, the defendant was the bailiff of the plaintiff, by appointment ; if, by agreement, he was to account, and he acknowledged his liability ; then, clearly, it is wholly immaterial, in whom the legal title to the property was. At common law, the defendant would be accountable, if he had been made the bailiff of the plaintiff; (*Co. Litt.* 200. *b.*) and, by our statute, (*tit.* Account, *sec.* 4.) this action is expressly given, "where two persons hold any estate as joint-tenants, tenants in common or co-parceners, and one of them receives, uses, or takes benefit of, such estate, in great-

er proportion than the amount of his interest in the principal estate." So that, upon the principles of the common law, the plaintiff would have been entitled to a verdict in his favour, had he proved, that the defendant was his bailiff, by appointment ; and, by force of the statute, he was also entitled to recover, upon proving that he and the defendant sustain to this property the relation of co-tenants ; and, that the defendant had received rent, or had taken benefit of the estate, in greater proportion than the amount of his interest in it.

Now, there was proof tending to show, that the defendant was the plaintiff's bailiff by appointment. The motion finds, that the plaintiff gave evidence to prove, and claimed he had proved, that from the "dissolution of said partnership (in 1834) to the 1st day of *April*, 1842, the defendant had let and demised the said *Roxbury* works to the firm of *J. D. Weeks & Co.*; and had received all the rents and profits thereof, *and had accounted for and paid to the plaintiff a part,* and a part only, of said rents and profits." But the instruction the court was requested to give, was, that the plaintiff could not maintain his action, for any reception by the defendant of the rents and profits, during the time he had the legal title of the whole thereof ; nor during the time of *Butler's* mortgage ; nor for the time after the levy of the *Davenport* and *Meade* executions ; and that the plaintiff's only remedy was in chancery. The court were, therefore, requested to take from the jury the whole case, and prevent them from finding even that the defendant was the plaintiff's bailiff, by appointment, and by agreement of the parties. Any such instruction would have been clearly erroneous ; and as the court was not bound to give any modified instruction from the one asked for, and that being clearly erroneous, there is, therefore, no error in this part of the case, even upon the supposition, that the plaintiff would not be entitled to recover at all, unless he is entitled to recover for the whole time from 1834 to 1842.

But the instruction asked for, would have been erroneous, had it been given, upon every principle. The only question involved in the issue, was, whether the defendant was the bailiff and receiver of the plaintiff of the property, or any of it, mentioned in the several counts of the declaration ? If so, then, upon the count or counts, upon which the defendant was

so found to have been the plaintiff's bailiff, the plaintiff must recover. For, however small the amount of personal property that the defendant might have sold, or however short the time during which he received the rents and profits of the estate, or any portion of it; still, if he had sold some of said property, or received some of the rents, or collected some of the debts, under such circumstances as to make him accountable, this issue must be found against him; because in either of these cases, he would be the bailiff and receiver of the plaintiff. Nor, is there any foundation in principle, nor can any authority be found, to sanction the idea suggested by the defendant, that there is any such thing, as a variance between the declaration and proof, because the proof did not satisfy the triers, that the defendant was the plaintiff's bailiff during the whole time from 1834 to 1842. There is no more reason for the adoption of any such principle, in the action of account, than in any other action. Had the plaintiff declared, that the defendant had received of him ten tons of iron to account for, and on the trial, he could only prove that he had received but one ton, no one doubts, that the issue, upon the plea of *never bailiff and receiver*, must, nevertheless, be found for the plaintiff; and it is equally true, that if he declares, that the defendant was his bailiff of certain real estate from 1834 to 1842, and he is only able to prove him to have been such for only one of those years, he must, nevertheless, recover. *Sturges* v. *Beach, 5 Day,* 452.

It is, therefore, no answer to the claim of the plaintiff, alleging that the defendant was his bailiff, and as such, received the rents of certain real estate, for the defendant to say, that "for a part of the time for which you claim, I am only liable to be called upon in chancery." If the fact is so, that for a part of the time, the defendant is only accountable in chancery, then the auditors will exclude that part of the time from their finding, and will only report for the time when he is accountable. The argument of the defendant, therefore, is wholly untenable.

Of a similar character, and equally unfounded, is the claim, that the court erred, because it omitted to charge the jury, that the second and third counts could not be supported, because they called for an account for a part only of the property that had belonged to the *Roxbury* works; it not

*Fairfield,*
June, 1844.

Lacon
*v.*
Davenport.

appearing that said property was described separately from the rest.

This claim seems to be founded upon the idea, that some different rule is applicable to these counts, because the property mentioned in them originally belonged to the copartnership that had existed between these parties. But we can recognize no such distinction as this. This is not a suit to settle copartnership accounts, but a suit to compel the defendant to account for property, which he had in his possession, and which belonged to the parties jointly. And it is perfectly immaterial how they acquired their title to it— whether it had belonged to the *Roxbury* works, or was purchased by the parties with their joint funds, after the dissolution of the partnership, or whether they acquired title to it in any other way. Indeed, it appears, that a part of the property mentioned in the third count, was claimed by the plaintiff never to have belonged to the *Roxbury* works. But, however the fact may have been, it is wholly immaterial. The defendant, certainly, is just as liable to account for the property, if it had belonged to the partnership, as if it had not. The objection, then, resolves itself into this, namely, the defendant is not liable in this action, because he is not called upon to account for all the property he had in his hands, as the plaintiff's bailiff. This, we think, has been sufficiently shown to be untenable. The property, however, mentioned in each of these counts, did, so far as we know, in fact include all the personal property belonging to these parties in any way. It no where appears, that there was any personal property belonging to them, not included in these counts; and we believe the fact to be, that there was none. The case, then, is simply this. These parties jointly owned real and personal estate, and had debts due them ; and in the first count, the defendant is called upon to account for all the property belonging to the *Roxbury* works ; in the second and third counts, he is called upon to account for all the personal property they owned ; and in the fourth count, he is called upon to account for the avails of certain debts he had collected. In all this, we are unable to see any thing objectionable.

It was said, that the effect of the finding was, to compel the defendant to account for as many distinct trusts as there

were counts in the declaration, though there was but one trust in all. If there is any thing in this argument, it applies equally to every other case, where there is but one cause of action, and the plaintiff, for the purpose of guarding against an insufficient statement in one count, or to accommodate the statement to any possible state of the proof, sees fit to insert two or more counts in his declaration. The argument, therefore, if it proves any thing, proves too much; for, unless there can be shown to be a distinction in this respect between the action of account and other actions, in which two or more counts may be joined in the declaration; it shows, that in every such case, where there is but one cause of action, but one count can be inserted in the declaration.

The defendant has not attempted to show any such distinction. We know of none; and we do not think there is any foundation for the defendant's argument. If there were in fact as many distinct trusts as there are counts in the declaration, the defendant ought to account for them all. If there was in fact but one trust, which applies only to one of the counts, the auditors will not hold the defendant accountable for any other. Whether the plaintiff or the defendant is in arrear, is the precise question before the auditors. It is not to be presumed they will find either party to be so, without evidence; and if there is no evidence of but one dealing between the parties, the defendant, of course, can not be found to be in arrear on any other.

If we are right in what has been said, it follows, that there is no error, either in the charge to the jury, or in the omission of the court to charge them as requested.

We do not, therefore, advise a new trial.

In this opinion the other Judges concurred.

New trial not to be granted.