MINNIE R. HILL, EXECUTRIX (ESTATE OF JOHN R. HILL) *vs.* ANDREW R. JONES.

FRANK A. HOTCHKISS *vs.* ANDREW R. JONES.

MALTBIE, C. J., HAINES, HINMAN, BANKS and AVERY, Js.

Argued December 5th, 1933—decided January 2d, 1934.

*Raymond E. Baldwin,* with whom was *William H. Cable,* for the appellants (plaintiffs).

*J. Moss Ives,* for the appellee (defendant).

HAINES, J. These actions were begun in 1920. The original plaintiff in the first action was John R. Hill, who died in 1930 and whose executrix was thereafter made plaintiff. On November 5th, 1905, Hill and the defendant Jones bought certain real estate in the city of Danbury with a building thereon. The property was subject to two mortgages of $20,000 and $6850 respectively. Their common ownership continued to August 15th, 1914, when Hill sold his interest to Hotchkiss, the plaintiff of record in the second of these actions. Thereafter Hotchkiss held the property in common with Jones until December 16th, 1919, when Hill repurchased from Hotchkiss and again became an owner in common with Jones, and so continued until May 25th, 1922, when he sold his interest to Jones, who thus became the sole owner of the property.

In November, 1905, when Hill and Jones bought the property, one of the tenants of the building was The Danbury Hardware Company, under a five year lease at $2000 per year rental. This lease was assigned to Hill and Jones, and expired in 1907 and was not renewed, but the company continued as a tenant, paying at the same rate as before, until July 1st, 1918, and thereafter paid at the rate of $2400 per year. The stock of this company was owned by Hill and

Jones from about 1896 until June 1st, 1911, and both were officers of the company. On the latter date, Hill sold his stock in the company to Jones and the latter thereafter remained the sole owner of all the stock save two shares. Hill's claim for rental in the present action dates from this time, and the two periods during which Jones owned the company, while both owned the real estate, aggregate five years seven and five sixths months, while the claim of Hotchkiss covers five years and four months.

Hill also sought a partition of the real estate when he began his action in 1920, and judgment for partition by sale was ordered October 29th, 1920, and a committee was appointed to make the sale and take an accounting of rents. The judgment of partition was never carried out, for Hill sold his interest to Jones in 1922. The complaints as amended in 1930, demanded an accounting at $300 per month rental for the company, alleging that this was the amount which Jones had agreed the company would pay and that it was in fact paid by the company. The report of the committee upon the accounting is of record as of September 2d and 15th, 1932. It finds that the company did not so agree, but whether Jones had himself so promised, as alleged in the complaints, is not found. Of record, therefore, this allegation of the complaints was not sustained.

The committee found that the actual amount of rentals paid by all the tenants to Jones for the five years seven and five sixths months of Hill's ownership amounted, including a small balance on hand of $34.10, to $15,020.10, and the disbursements during the same period were $17,855.92, showing a deficit of $2826.82. Upon this report of the facts the court gave judgment in the Hill case for the defendant. In the Hotchkiss case, the committee found the amount of the receipts

to be $12,340.75 and the expenditures $9004.76, show-ing a surplus of $3335.99. To one half of this the court added an interest charge of $1379.71, and gave judgment for Hotchkiss for $3047.70.

No objections to the acceptance of this report ap-pear of record, and for the purposes of this appeal the facts therein stated are to be treated as established. Upon the plaintiff's claim that the rental paid by the company should have been calculated at $300 per month, however, the committee filed certain alterna-tive figures based upon that contention which showed that the receipts in the Hill case would have been $23,149.41 and the expenditures $17,855.92, creating a surplus in that case of $5293.49 and increasing the surplus in the Hotchkiss case to $12,891.20. The court gave judgments on the original report, and practically the sole question to which the five assignments on the present appeal are directed, is conceded to be whether the court erred in refusing to give judgments based upon the alternative figures.

Since no agreement is established that the company would pay $300 per month rental, Jones is not liable in these actions on that basis unless the relations of the parties were such as to impose that obligation upon him as matter of law. Basing the conclusion upon the testimony of real-estate men, the committee found that $300 per month would have been a "reasonable" rental for the Hardware Company, and the question thus presented is the legal one whether Jones, the owner of the company, was liable to account to his co-owner of the real estate for the rentals actually received by him or for the "reasonable" rental of $300 per month.

The plaintiffs rest their claim on the provisions of General Statutes, § 5837, the relevant portion of which reads: "When two or more persons shall hold estate

as joint tenants, tenants in common or coparceners, if one of them shall occupy, receive, use or take the benefit of such estate in greater proportion than the amount of his interest in the principal estate, any other party and his executors or administrators may bring an action for an accounting as for use and occupation against such person and recover such sum or value as shall be in excess of his proportion."

Both the complaints in the present actions allege, and the answers admit, that the defendant Jones "acted as manager" of the common property "and the affairs thereof" and had "entire charge and control of the collection of rents and has received all moneys paid on account thereof, and has disbursed all moneys for interest, taxes and repairs." There is thus no question here of an adverse or tortious holding under which a tenant who has been ousted can require his co-tenant in possession to account to him for the fair rental value of the property of which he has been deprived. *Names* v. *Names*, 48 Neb. 701, 709, 67 N. W. 751; *Cain* v. *Cain*, 53 S. C. 350, 355, 31 S. E. 278; *Rippe* v. *Badger*, 125 Iowa 725, 729, 101 S. W. 642; *Edsall* v. *Merrill*, 37 N. J. Eq. 114; *Willes* v. *Loomis*, 87 N. Y. Sup. 1086, 1089. Ouster will not be presumed from mere exclusive possession of the common property by one cotenant. It is necessary to prove actual ouster. *McLaughlin* v. *McLaughlin*, 80 Md. 115, 30 Atl. 607.

This, on the contrary, is shown by the pleadings and the established facts to have been by tacit assent a holding and management by one cotenant for and on behalf of both. Moreover, the claim is specifically one for "moneys collected as rents" rather than for a sum representing the fair rental value. After the expiration of the company's lease in 1907, under which Hill and Jones were accepting $2000 per year from the

company, the latter continued the payment of the same rental until Hill sold his interest in the real estate to Hotchkiss in 1914. Thus Hill acquiesced in the payment of $2000 per year for seven years without apparent objection, and this acquiescence continued with Hotchkiss until the rent was increased in 1918 to $2400 per year. At common law a cotenant in possession was not chargeable by his cotenant for the use of the property, since his occupancy was presumed to be his own right as the owner of one half of all and every part of the common property. *Woolley* v. *Schrader*, 116 Ill. 29, 39, 4 N. E. 658, citing Bacon's Abridgment, 32; Coke on Littleton, 209 b. Unless he was bailiff for his cotenant he was not accountable to him for anything he received from the common estate, and could lawfully appropriate all the rent and profits to his own benefit. 7 R. C. L. p. 826. This seeming defect in the law was met in England by Statutes of Westminster 2, Chaps. 6, 22, and Statute 4 Anne, Chap. 16, § 27, upon which our own statute, General Statutes, § 5837, and that of many of the States in this country are to some extent modeled.

We must treat this action, therefore, as one for the recovery of the rents actually received by Jones under an implied agreement that he should manage the property and collect the rentals at not less than the rates which were being paid when the agreement went into effect. The third, fourth and fifth assignments of error are therefore not sustainable. Under the first assignment the appellants contend that, this being a suit in equity, we must look through the corporate organization to determine the real interest of the parties involved. This is a sufficient general statement of an established principle in equity, applicable in certain cases, as, for example, where the corporation is "a mere

sham or device to accomplish some ulterior purpose or is a mere instrumentality or agent of another corporation or individual owning all or most of its stock." In cases of that character, equity looks through the corporation to those who compose it. *Hoffman Wall Paper Co., Inc.* v. *Hartford,* 114 Conn. 531, 534, 535, 159 Atl. 346, and cases cited. To do so, however, in the absence of circumstances of that nature would be to "thwart the public policy of the State instead of . . . upholding it." Cardozo, Chief Justice, in *Berkey* v. *Third Avenue Ry. Co.,* 244 N. Y. 84, 95, 155 N. E. 58.

The claim under the second assignment is sustained, but it is not inconsistent with the conclusions we have reached. Whatever questions the appellants may now make as to the completeness or accuracy of the defendant's accounts, we are concluded by the finding of the committee that the figures given are "a correct statement of the moneys actually received and disbursed." No attempt to change this finding of fact appears of record.

There is no error on either appeal.

In this opinion the other judges concurred.