ROSE LERMAN *v.* JACK LEVINE ET AL.
(5881)

BORDEN, DALY and O'CONNELL, Js.

*(One judge dissenting)*

Argued October 6, 1987—decision released May 10, 1988

*Walter J. Williams,* for the appellants-appellees (named defendant et al.).

*Thomas W. Beecher,* for the appellee-appellant (plaintiff).

O'CONNELL, J. The defendants, Jack and Tobey Levine,[1] husband and wife, appeal from a judgment for the plaintiff in an action for reformation of a deed and for partition and sale of real estate. The defendants counterclaimed seeking contribution from the plaintiff for property-related expenses. The defendants claim the trial court erred (1) in reforming the deed, (2) in ordering partition, (3) in refusing to order reimbursement for various payments made by the defendants, and (4) in ordering that the plaintiff be paid one half of the mortgage payoff upon sale, in addition to one half of the net proceeds obtained. In her cross appeal, the plaintiff alleges error in the trial court's denial of her claim for payments for use and occupancy of the premises by the defendants following her departure from the property. We find no error on the appeal and error on the cross appeal.

The trial court could reasonably have found the following facts. The defendants wished to move from New York to Connecticut, but could not afford to do so. In 1973, at the defendants' solicitation, the plaintiff, mother of the defendant Tobey Levine, sold her New

---

[1] The named defendant and his wife are referred to as the defendants in this opinion. The other defendants, creditors with interests in the subject property, are not involved in this appeal.

York home and paid approximately $40,000 toward the purchase of an $80,000 Ridgefield property and related items of personalty. In exchange, the plaintiff was to receive a one-half interest in the Ridgefield property. The defendants agreed to pay the remaining $45,000 mortgage and all other "shelter expenses" excepting real estate taxes, which the parties agreed to pay jointly. Although the parties own the property as joint tenants, the deed as prepared granted the plaintiff only a one-third, rather than the promised one-half, interest in the property.[2] The plaintiff and the defendants lived together in the Ridgefield house until their relationship began to deteriorate to the extent that, on three occasions, the plaintiff suggested the house be sold and the parties go their separate ways. This proposal, however, was never acted on. The plaintiff left the house in 1984 for open-heart surgery and, because of the breakdown in her relationship with the defendants, she declined to return to the house after the surgery. The defendants, however, were not opposed to her returning. The plaintiff subsequently instituted this action, and the trial court ordered reformation of the deed and partition by sale, but denied the plaintiff her claim for use and occupancy payments. The trial court also denied the defendants' counterclaim for property related expenses.

I

The defendants' claims of error all concern determinations made by the court based upon the testimony and evidence presented at trial. It is not the function of this court, upon claims of evidentiary error, to duplicate the work of the trial court. "The trier of the facts is free to accept or reject, in whole or in part, the evidence of either party." Holmes v. Holmes, 2 Conn. App.

[2] For the purposes of this opinion no distinction is made between the terms "joint tenant" and "cotenant" and they are used interchangeably.

380, 382, 478 A.2d 1046 (1984). Upon appeal, we will not retry the facts nor will we evaluate the credibility of witnesses. See *Bowman* v. *Williams,* 5 Conn. App. 235, 238, 497 A.2d 1015 (1985), cert. dismissed, 201 Conn. 366, 516 A.2d 1351 (1986), and cases cited therein. "After a review of the record in this case, we find that the trial court's conclusions on these [four] issues were legally correct and factually supported. The decision of the trial court was not clearly erroneous in light of the evidence and the pleadings in the record as a whole. Practice Book § [4061]; *Damora* v. *Christ-Janer,* 184 Conn. 109, 113, 441 A.2d 61 (1981); *Pandolphe's Auto Parts, Inc.* v. *Manchester,* 181 Conn. 217, 221–22, 435 A.2d 24 (1980)." *MacArthur/Nathan Associates* v. *Edson Realty, Inc.,* 3 Conn. App. 675, 676, 491 A.2d 1111 (1985).

## II

The plaintiff's cross appeal alleges that the trial court erred in denying her claim for use and occupancy payments from the defendants for their exclusive use of the property after the plaintiff's departure therefrom. The trial court held that without proof of ouster, such payments could not be collected from a joint tenant. We disagree.

Although not recently addressed by the courts of this state, the law of cotenancy boasts a long and complex history. One respected treatise makes the astute observation that "[w]hether cotenants must account to each other for rents and profits they have received from their property is not susceptible of a simple answer. [Among other contingencies] the answer would be affected by applicable statutes." American Law of Property (1st Ed. 1952), Concurrent Estates § 6.14. As will be seen, infra, we have an "applicable statute" in Connecticut.

Our analysis commences in the ancient common law of property. Under the early rule "a cotenant in pos-

session was not chargeable by his cotenant for the use of the property, since his occupancy was presumed to be his own right as the owner of one half of all and every part of the common property. *Woolley* v. *Schrader,* 116 Ill. 29, 39, 4 N.E. 658 [1886], citing Bacon's Abridgement, 32; Coke on Littleton, 209 b. Unless he was bailiff for his cotenant he was not accountable to him for anything he received from the common estate, and could lawfully appropriate all the rent and profits to his own benefit. 7 R. C. L. p. 826." *Hill* v. *Jones,* 118 Conn. 12, 17, 170 A. 154 (1934).[3] In 1709, the English parliament remedied this unfair situation by passage of the Statute of Anne.[4] "This statute made any tenant in common who received more than his just share of the rents and profits liable to his cotenants for the excess; and it was no longer necessary that he should take as bailiff by appointment in order to make him responsible." 20 Am. Jur. 2d, Cotenancy and Joint Ownership § 40. Because of its early passage, the Statute of Anne is generally considered to be ingrained in the common law, emigrating to this country with the settlors long before the Revolutionary War, a common historical point of demarcation in legal analysis. See *Friend* v. *Childs Dining Hall Co.,* 231 Mass. 65, 120 N.E. 407 (1918); *Johnson* v. *Johnson,* 38 N.D. 138, 164 N.W. 327 (1917). This statutory remedy, however, was

---

[3] "Bailiff" is used in its older meaning of " 'a servant that has the administration and charge of lands, goods and chattels, to make the best benefit for the owner, against whom an action of account lies, for the profits which he has raised or made, or might by his industry or care have raised or made.' " *Barnum* v. *Landon,* 25 Conn. 137, 149 (1856).

[4] The Statute of Anne provides in pertinent part: "Actions of Account shall and may be brought and maintained against the Executors and Administrators of every Guardian, Bailiff, and Receiver; and also by one Joint-tenant, and Tenant in Common, his Executors and Administrators, against the other, as Bailiff for receiving more than comes to his just share or Proportion, and against the Executor and Administrator of such Joint-tenant, or Tenant in Common." Act of Anne, c. 16, XXVII (1704); see also 2 Statute of Westminster cs. 6, 22.

limited to property that produced rental payments or other tangible receipts from a third party. The English courts did not construe the Statute of Anne as applicable to an action for benefits enjoyed by a cotenant who occupied common property to the exclusion of his cotenants. Phrased differently, mere sole occupancy did not render the occupying cotenant liable to his co-owners. "This has also been the view of many American courts, which have supported the rule that *in the absence of a statute requiring a different result,* a cotenant who has enjoyed occupancy of the common premises . . . is not liable to the others . . . for the reasonable value of his occupancy, where they have not been ousted or excluded . . . ." (Emphasis added.) 20 Am. Jur. 2d, supra, § 41.[5] Notwithstanding a split of authority on this construction of the Statute of Anne, in which some American jurisdictions hold occupying cotenants liable to their co-owners for use and occupancy,[6] we need not decide which view we will adopt as the Connecticut legislature some time ago enacted "a statute requiring a different result." General Statutes § 52-404 (b) provides "[w]hen two or more persons hold property as joint tenants, tenants in common or coparceners, if one of them occupies, receives, uses or takes benefit of the property in greater proportion than the amount of his interest in the property, any other party and his executors or administrators may bring an action . . . *for use and occupation against such person and recover such sum or value as is in excess of his proportion.*" (Emphasis added.)[7]

---

[5] Cases from the jurisdictions supporting this view are collected in 27 A.L.R. 197, 198, 206, 211–12; 51 A.L.R.2d 413–15 § 8.

[6] Cases from the jurisdictions supporting this view are collected in 27 A.L.R 198, 211–12; 51 A.L.R.2d 421–22 § 10.

[7] The venerable Swift's Digest, published in 1822, states that while an action by a party other than a bailiff would not lie at common law, "now in England, as well as in this country, account will lie by statute" without such status. 1 Swift, Digest 580.

This statute had its origin in a 1729 act of the Connecticut Colonial General Court.[8] The colonial draftsman, however, did not include any reference to actions for use and occupancy in this predecessor of § 52-404 (b). In 1769, however, the statute was revised to provide a cause of action for "Joint Tenants, Tenants in Common or Co-partners," when "[o]ne or more of the Owners of such Common Interest shall take, receive, use, or take Benefit of such Common Interest, in greater Proportion than such Common Interest, in greater Proportion than such Owner or Owners that so receives, has, and owns in the Principal Estate." This statute, with some modification, appeared in mesne revisions[9] over the next two centuries.[10] None of the modifications was relevant to the issue at hand until 1913 when the language *"or for use and occupation"* was added.[11] Since 1913 there have been no further relevant changes in the statute.

In the present case, the defendants contend that, in order to succeed in her action for use and occu-

[8] Chapter 38 of the Connecticut Colonial Laws of 1729 provides that: "Be it Enacted by the Governour, Council and Representatives, in General Court Assembled, and by the Authority of the same, that Executors, who are also Residuary Legataries are with-holden from them, by their Co-Executors, may bring their Action of Account against their Co-Executors for the Recovery thereon; And the same Action is also hereby allowed to Residuary Legataries, against Executors; Any Law, Usage or Custom to the contrary not with standing."

[9] A footnote to the 1875 revision is misleading. Relying on *Lacon* v. *Davenport,* 16 Conn. 331 (1844), the footnote appears to state that *Lacon* disallows actions between cotenants merely because of the status of the parties as cotenants. In fact, *Lacon* is devoted to a question of whether the defendant had been proved to be the plaintiff's bailiff. Id., 343. See footnote 3, supra.

[10] See, e.g., Revisions of 1796; 1805; 1808; 1821; 1835; 1838; 1849; 1866; 1875; 1888 (§ 1039); 1902 (§ 954); 1913 (§ 954); 1918 ( § 5990); 1930 (§ 5837); 1949 (§ 8148).

[11] Chapter 18 of the General Statutes of 1913 provides in pertinent part that "when two or more persons hold estate as joint tenants, tenants in common, or coparceners, *if one of them shall occupy,* receive, *use,* or take

pancy payments, the plaintiff must show that she was "ousted," or forced from the jointly held property. We disagree. Prior to the 1913 amendment, unless there was ouster, a cotenant could not recover for use and occupation from his co-owner in possession under either the Statute of Anne or the Connecticut statute. This was changed by the 1913 amendment, supra. "[I]n construing legislative enactments, we presume that amendments to a statute effect a change in the existing law." *Waterbury Petroleum Products, Inc.* v. *Canaan Oil & Fuel Co.*, 193 Conn. 208, 232, 477 A.2d 988 (1984). No reasonable interpretation can be given to the statute after the 1913 amendment but that the legislature intended that cotenants could thereafter sue one another and recover judgments for use and occupancy by the tenant in possession.

The 1913 amendment does not interpose ouster as a condition precedent to the bringing of an action for use and occupancy. We must interpret the statute as written. *Ganim* v. *Roberts*, 204 Conn. 760, 763, 529 A.2d 194 (1987); *Edelson* v. *Zoning Commission*, 2 Conn. App. 595, 599, 481 A.2d 421 (1984). Section 52-404 (b) is plain and unambiguous, leaving no room for construction. Accordingly, we cannot by construction read into this statute a provision (i.e. ouster) not clearly mandated therein. *Johnson* v. *Manson*, 196 Conn. 309, 317, 493 A.2d 846 (1985), cert. denied, 47 U.S. 1063, 106 S. Ct. 813, 88 L. Ed. 2d 787 (1986); *Metropolitan District* v. *Barkhamsted*, 3 Conn. App. 53, 70, 485 A.2d 1311, cert. denied, 195 Conn. 801, 487 A.2d 564 (1984). Section 52-404 (b) must be applied as its words direct. *Johnson* v. *Manson*, supra, and cases cited therein.

---

benefit of such estate *in greater proportion than the amount of his interest in the principal estate,* any other party and his executors or administrators, may bring an action of account *or for use and occupation* against such receiver and recover such sum or value as is in excess of his proportion." (Emphasis added.)

The holding in *Hill* v. *Jones,* supra, the only Connecticut case considering the statute after the 1913 use and occupancy language was added, is not contrary to the result we reach today. *Hill* involved rents collected from tenants in commercial property, a relationship which clearly has not required ouster since the passage of the Statute of Anne. The *Hill* court expressly excluded from its discussion a case, such as that before us, involving simple use and occupancy. *Hill* v. *Jones,* supra, 16. Accordingly, the remarks of the *Hill* court are, at best, dicta and not binding precedent on this court.

The trial court should have found that the plaintiff was entitled to use and occupancy payments from the date she left the premises.

There is no error on the appeal.

There is error on the cross appeal.

The case is remanded for further proceedings to determine the use and occupancy value and to reschedule the partition sale.

In this opinion DALY, J., concurred.

BORDEN, J. Concurring and dissenting. I concur with the majority regarding the appeal. I disagree, however, with the majority regarding the cross appeal. Therefore, I dissent and would find no error on the cross appeal.

I agree with the majority that under General Statutes § 52-404 (b) it is not necessary for a cotenant, who does not occupy the property in question, to establish ouster in order to be entitled to an accounting for a proportion of use and occupancy from her cotenant who occupies the property. An ouster is a wrongful and intentional exclusion from property of one who is entitled to its possession. *Diamond* v. *Boynton,* 38

Conn. Sup. 616, 618, 458 A.2d 18 (1983), citing *Newell* v. *Woodruff,* 30 Conn. 492, 497 (1862); see also *Struzinski* v. *Struzinsky,* 133 Conn. 424, 428, 52 A.2d 2 (1947). The statute does not require that a cotenant, who is out of occupancy and who wishes her cotenant in occupancy to pay her a proper proportion of use and occupancy, must establish that she was wrongfully dispossessed.

I disagree, however, that, as the majority appears to hold, all she has to establish in order to be so entitled is that she is a cotenant out of occupancy. The long-established judicial gloss on the statute, which the majority ignores, requires that she establish much more.

First, we have held that "the vast weight of authority in this jurisdiction requires the allegation of a demand and refusal before a party may successfully invoke the remedy of an accounting." *Zuch* v. *The Connecticut Bank & Trust Co.,* 5 Conn. App. 457, 461–62, 500 A.2d 565 (1985). The record in this case is bereft of such pleading or proof.

Second, our case law has uniformly considered the accounting statute to incorporate the complete array of equitable principles. See *Vesce* v. *Lee,* 185 Conn. 328, 441 A.2d 556 (1981); *Seidel* v. *Seidel,* 110 Conn. 651, 657, 149 A. 394 (1930); *Brady* v. *Brady,* 86 Conn. 199, 206–208, 84 A. 925 (1912); *Brady* v. *Brady,* 82 Conn. 424, 426, 74 A. 684 (1909). A cotenant's "due proportion" under General Statutes § 52-404 (b) "cannot be determined without a consideration of all the equities between the parties, arising out of the dealings with respect to the land in question." *Brady* v. *Brady,* 82 Conn. 424, 426, 74 A. 684 (1909). Of critical importance in considering those equities is whether there was an intent or understanding between the cotenants that a payment or contribution would be due. See *Vesce* v. *Lee,* supra, 336–38; *Neumann* v. *Neumann,* 134 Conn. 176,

178–79, 55 A.2d 916 (1947); *Seidel* v. *Seidel,* supra, 656–58; *Brady* v. *Brady,* 86 Conn. 199, 206–208, 84 A. 925 (1912).

Indeed, our Supreme Court has repeatedly held that, as between husband and wife, there is a rebuttable "presumption that the parties intended that all expenditures made after [their] separation, even if only made by one of them, would continue to accrue for the benefit of both parties without any future accounting or contribution. *Seidel* v. *Seidel,* [supra, 656]; see *Neumann* v. *Neumann,* [supra, 178–79]; *Brady* v. *Brady,* 86 Conn. 199, 207–208, 84 A. 925 (1912); *Kelley* v. *Madden,* 40 Conn. 274, 279–80 (1873); *Baldwin* v. *Breed,* 16 Conn. 60, 67 (1843)." *Vesce* v. *Lee,* supra, 336–37. "[T]he single fact that the plaintiff vacated the family home, leaving the defendant in possession, was not sufficient to rebut the presumption . . . ." *Vesce* v. *Lee,* supra, 336. I see no reason to apply a different principle between, on one hand, a mother and, on the other hand, her daughter and son-in-law. It is anomalous, therefore, to say that if a cotenant in possession spends money to improve the property he is presumed to do so without expectation of contribution from his close family cotenant, but that the tenant out of possession is at the same time entitled to collect use and occupancy from the cotenant in possession.

Finally, the majority's construction of the statute does violence to reasonable expectations. I believe that the judicial gloss which our courts have long placed on the statute conforms to such expectations. I do not believe that the statutory amendment in 1913, which has heretofore never been viewed as applicable regardless of the equities between the parties, including their intentions and understandings, justifies the result reached by the majority on the cross appeal.

In this case, the trial court found that the plaintiff left the premises voluntarily. The plaintiff does not chal-

lenge this finding. There is no evidence in this record of any intention or understanding on the part of any of the parties that the defendants were expected to pay use and occupancy to the plaintiff during the period of her voluntary absence. Under these circumstances, I would hold that the plaintiff was not entitled to an accounting from the defendants for use and occupancy.