## ROWLAND A. CROWELL, JR. *v.* SHARRON F. DANFORTH
### (14332)

PETERS, C. J., SHEA, GLASS, COVELLO and BORDEN, Js.

Argued December 10, 1991—decision released May 19, 1992

*W. Bradley Kellogg,* for the appellant (plaintiff).
*David M. McHugh,* for the appellee (defendant).

COVELLO, J. This is an action seeking the return of a gift allegedly made in contemplation of marriage and seeking an accounting for the use and occupancy of jointly owned real property, to which the defendant filed a cross complaint seeking a partition of the real estate or, in the alternative, its sale and a division of the proceeds.[1] The issues presented are whether the trial court was clearly erroneous in its findings that: (1) financial contributions by the plaintiff to a joint real estate enterprise were not conditional gifts made in contemplation of marriage; and (2) there were no sums due the plaintiff for use and occupancy of the jointly owned real property. We affirm the judgment of the trial court with respect to the first issue and remand the case to the trial court on the second issue.

The matter was referred to an attorney trial referee who found, inter alia, the following facts. In early 1986, the plaintiff, Rowland A. Crowell, Jr., and the defendant, Sharron F. Danforth, began dating. In September, 1986, they became engaged. After their engagement, the defendant began to look for a place for them to live. In due course, the plaintiff and the defendant signed a contract to purchase a home at 55 Charles Street in Fairfield. The plaintiff and the defend-

---

[1] General Statutes § 52-404 (b) provides: "When two or more persons hold property as joint tenants, tenants in common or coparceners, if one of them occupies, receives, uses or takes benefit of the property in greater proportion than the amount of his interest in the property, any other party and his executors or administrators may bring an action for an accounting or for use and occupation against such person and recover such sum or value as is in excess of his proportion."

ant jointly applied for mortgage financing through a bank. Each filed separate applications as the plaintiff, alone, would not have qualified for the amount necessary to purchase the premises and the defendant's income and credit were necessary to qualify for the mortgage loan. Prior to the closing, there was no mention or discussion of a conditional gift dependent upon a future marriage.

On March 23, 1987, the parties took joint title to the Charles Street property with rights of survivorship. The plaintiff furnished $63,760.66, the amount needed over and above the mortgage financing in order to close. The plaintiff's money was used to purchase the home and the defendant's was saved for contemplated improvements. After closing, the parties moved in and shared household chores and expenses. Although there was no express agreement concerning the sharing of each and every expense, the plaintiff made mortgage and utility payments and the defendant bought food and other amenities. Thereafter, friction arose and plans for the contemplated marriage terminated.

The attorney trial referee found that there had been no express condition of marriage attached to either party's contributions to the property and that there was no factual basis to conclude that one should be implied. The referee stated: "As is evident from the time, work and improvements contributed by each after the purchase, each party regarded the purchase as a joint undertaking. Each was jointly and severally liable to People's Bank. Each made contributions of time and labor without regard to ownership. Payments of mortgage and utilities and payments for landscaping, carpeting, etc. were made without any attempt to balance respective contributions. . . . Each party used each other's funds, credit and labor to further their objectives. *To the extent gifts might have been contemplated, they were completed when made by each.*" (Emphasis

added.) The referee concluded that "[i]t was a business decision to purchase, improve, and enhance 55 Charles Street." The referee recommended that judgment be rendered for the defendant on the complaint and for the plaintiff on the defendant's cross complaint. The trial court accepted the recommendation and rendered judgment accordingly. The plaintiff appealed to the Appellate Court. We thereafter transferred the matter to ourselves pursuant to Practice Book § 4023.

I

The plaintiff contends, in three distinct arguments, that his contributions to the joint real estate venture were gifts in contemplation of marriage and that, therefore, the decision of the trial court to the contrary was clearly erroneous. We address each claim seriatim.

A

The plaintiff first claims that the trial referee found that his contribution of $63,760.66 at the time of the purchase of the house constituted a gift of $31,880.33 to the defendant and that the trial referee improperly concluded that this was not a conditional gift made in contemplation of marriage. Specifically, the plaintiff refers to that portion of the trial referee's report that states: "To the extent gifts might have been contemplated, they were completed when made by each. While a finding of an outright gift is sufficient to dispose of the plaintiff's claim, other issues have been raised." This language does not constitute a finding that a gift had in fact been made by either party. It simply means that, to the extent that either party might have intended that his or her contribution to the enterprise constituted a gift, such a gift was outright, unconditional and complete at the time that it was made. Further, the assertion that the trial referee found that the plaintiff had made a gift to the defendant overlooks the

referee's specific rejection of that assertion in response to the plaintiff's motion to correct his report.[2] We conclude, therefore, that this claim is without merit.

## B

The plaintiff next argues that the defendant's answer as originally filed constituted an admission by the defendant that the plaintiff made to the defendant a gift of a one-half interest in their house in contemplation of their marriage. In her original answer, the defendant admitted paragraphs 4 and 5 of the first count of the plaintiff's complaint that asserted: "4. At the time the parties took joint title to the real estate, the parties were planning and/or contemplating marriage. 5. The plaintiff consented and/or allowed the defendant to take title jointly with him in anticipation that they were going to be married in the near future . . . ." In an amended answer, the defendant admitted only that the parties had taken joint title to the real estate and denied the remainder of the allegations.

We fail to see how this language establishes a gift in contemplation of marriage. The fact that the parties took joint title to the house at a time when they were planning to be married does not establish that the plaintiff made a gift to the defendant. Furthermore, even were this language to have the meaning that the plaintiff assigns to it, i.e., that the plaintiff's use, in paragraph 5, of the language "consented and/or allowed the defendant to take title jointly" raises the

[2] On August 29, 1990, the plaintiff filed a restated motion to correct the report of the attorney trial referee. The plaintiff sought the addition of the following fact: "The plaintiff's actions in contributing all the funds to purchase and close upon 55 Charles Street and then allowing or consenting to the taking of title in the joint names of the parties was a gift to the defendant from the plaintiff."

On November 5, 1990, the trial referee denied the motion to correct the report with respect to this claim.

inference that a gift was involved, this is plainly contrary to the other evidence before the trial referee.

Upon the amendment of the original answer, the superseded pleading ceases to be a conclusive judicial admission and becomes nothing more than an evidentiary admission to be weighed and considered by the trial court along with the rest of the evidence. "When the court has allowed a party in a civil case to withdraw, amend, or supersede a pleading, the pleading ceases to be usable as a conclusive judicial admission, but is usable as an evidentiary admission." C. Tait & J. LaPlante, Connecticut Evidence (2d Ed. 1988) § 11.5.3, p. 333; see also *Schenck* v. *Pelkey,* 176 Conn. 245, 248, 405 A.2d 665 (1978); *Nichols* v. *Nichols,* 126 Conn. 614, 620, 13 A.2d 591 (1940). The defendant denied any implication of a gift in her amended answer and the trial referee specifically concluded that the plaintiff advanced his money in contemplation, not of marriage, but of the fact that the defendant would later contribute her resources for mutually planned improvements. The plaintiff's claim that the defendant's original answer constitutes a definitive concession that the plaintiff's payment of the down payment and closing costs formed a gift is, therefore, without merit.

C

The plaintiff next claims that the trial referee's finding that it was a "business decision" to purchase the house was clearly erroneous. The plaintiff argues that the trial referee's finding that the plaintiff's payment of all the initial costs to purchase the house constituted a gift was irreconcilable with his finding that it was a business decision. The plaintiff asserts that there is evidence to support the conclusion that he made a gift but no evidence to support the finding that the purchase of the house was a business decision. We disagree.

First, several witnesses testified that the parties needed each other's income and credit in order to afford the house and to qualify for the mortgage. Second, the parties testified that they had planned to use the plaintiff's money for the initial costs and the defendant's savings and income for many postpurchase expenses, improvements and amenities,[3] as they both felt that they were outgrowing their respective apartments and needed a bigger place that could accommodate both of them and the defendant's son. We conclude that "no mistake has been committed" and that the trial referee's finding of a business decision was not clearly erroneous. " 'The trial court's findings are binding upon this court unless they are clearly erroneous in light of the evidence and the pleadings in the record as a whole. . . .' We cannot retry the facts or pass on the credibility of the witnesses." (Citations omitted.) *Nor'easter Group, Inc.* v. *Colossale Concrete, Inc.,* 207 Conn. 468, 473, 542 A.2d 692 (1988). "A finding of fact is clearly erroneous when there is no evidence in the record to support it . . . or ' "when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." ' *Doyle* v. *Kulesza,* 197 Conn. 101, 105, 495 A.2d 1074 (1985), quoting *United States* v. *United States Gypsum Co.,* 333 U.S. 364, 395, 68 S. Ct. 525, 92 L. Ed. 2d 746 (1948)." *Inland Wetlands & Watercourses Agency* v. *Landmark Investment Group, Inc.,* 218 Conn. 703, 708, 590 A.2d 968 (1991).

## II

The plaintiff next claims that the trial referee's conclusion that the defendant was not unjustly enriched by her use and occupancy of the house is clearly erro-

---

[3] The defendant introduced into evidence ledgers detailing household expenses and improvements that she claimed demonstrated that she had contributed over $46,000 to their joint household venture.

neous. The plaintiff asserts that his payment of all the monthly mortgage and utility bills for the residence, from the time of the purchase of the property on March 23, 1987, through the conclusion of the trial on February 20, 1990, while the defendant paid no rent, unjustly enriched her, at his expense, to the extent of 50 percent of the fair rental value of the property or $19,350. The plaintiff further contends that the trial referee concurred with this assertion in one of his responses to the plaintiff's motion to correct.

After the issuance of the trial referee's report, the plaintiff filed a motion to correct in which he requested, inter alia, that the trial referee grant the following as additions to the report to establish that the defendant had been unjustly enriched:

"A. 12. The defendant has been unjustly enriched to the extent of fifty (50%) percent of the fair monthly rental value of 55 Charles Street for the reason that she has resided there without contributing to the carrying costs of the property.

"A. 13. The fair rental value of the property was and is One Thousand Seventy-Five ($1,075.00) Dollars a month and, to that extent, the defendant has been unjustly enriched through March 23, 1990 in the amount of Nineteen Thousand Three Hundred Fifty ($19,350.00) Dollars and continues to be unjustly enriched during the subsequent period of time that [the] plaintiff has continued to carry the costs of the property. . . .

"C. 2. The plaintiff claims that his actions in providing all the funds to purchase and close upon the property, allowing the defendant to be the legal owner of one half of the equity, and paying the carrying costs of the property through the end of the trial and thereafter unjustly enriches the defendant to the expense and detriment of the plaintiff."

In his response, the trial referee denied A. 12 and C. 2 but granted A. 13. In doing so, the trial referee decided concurrently that the defendant had been unjustly enriched and that she had not been unjustly enriched. To the extent that the referee's responses to these portions of the motion to correct establish contradictory conclusions, we are left with an inadequate record upon which to determine whether the defendant was unjustly enriched. "Unjust enrichment requires a factual examination of the circumstances and of the conduct of the parties . . . that is not a task for an appellate court [but rather for the trier of fact]." *Montanaro Bros. Builders, Inc.* v. *Snow,* 190 Conn. 481, 490, 460 A.2d 1297 (1983). Because the trial referee is already well versed in the complex factual issues, we conclude that the proper course is to remand the case to the trial referee with direction to articulate further the basis of his report. When "the factual or legal basis of a trial court's decision is unclear, ambiguous, incomplete, or the court has failed to state any basis for its decision, this court has the power to remand the case for further articulation of the basis of the trial court's decision pursuant to Practice Book § 4061."[4] *Rostain* v. *Rostain,* 213 Conn. 686, 694, 569 A.2d 1126 (1990).

The judgment is affirmed with respect to the issue of a gift in contemplation of marriage; the matter is remanded to the trial referee for further proceedings with respect to the issue of unjust enrichment.

In this opinion PETERS, C. J., and GLASS, J., concurred.

BORDEN, J., dissenting in part. I agree with part I of the majority opinion. Regarding part II, however,

---

[4] Practice Book § 4061 provides in part: "If the supreme court deems it necessary to the proper disposition of the cause, it may remand the case for a further articulation of the basis of the trial court's factual findings or decision."

I disagree that the proper course is to remand the case to the trial referee for a further articulation of the basis of his finding of unjust enrichment. I believe that the proper course is to reverse the judgment regarding unjust enrichment and to remand for a new trial on that issue.

I do not read the record, as does the majority, as unclear, ambiguous, incomplete, or without any basis for the trial referee's decision on the issue of unjust enrichment. Paragraph A. 12 of the plaintiff's motion to correct requested the trial referee to correct his report by adding the following finding: "The defendant has been unjustly enriched to the extent of fifty (50%) percent of the fair monthly rental value of 55 Charles Street for the reason that she has resided there without contributing to the carrying costs of the property." The trial referee denied this request to correct his report.

Paragraph A. 13 of the plaintiff's motion to correct requested the trial referee to correct his report by adding the following finding: "The fair rental value of the property was and is One Thousand Seventy-Five ($1,075.00) Dollars a month and, to that extent, the defendant has been unjustly enriched through March 23, 1990 in the amount of Nineteen Thousand Three Hundred Fifty ($19,350.00) Dollars and continues to be unjustly enriched during the subsequent period of time that [the] plaintiff has continued to carry the costs of the property." The trial referee granted this request to correct his report.

These two rulings, however, are not inconsistent or ambiguous.[1] Paragraph A. 12 did not contain a time

---

[1] Nor is the trial referee's ruling with respect to paragraph C. 2 of the plaintiff's motion to correct inconsistent with the trial referee's ruling with respect to paragraph A. 13. Paragraph C. 2 of the plaintiff's motion to correct requested the trial referee to correct his report as follows: "C. By stat-

period or, even inferentially, an amount of claimed unjust enrichment. Paragraph A. 13, however, did contain a time period and a specific amount of claimed unjust enrichment. Indeed, it is clear that the amount of $19,350 was based on the following calculation. The period of time between when the engagement of the parties was terminated, September 30, 1988, and when the trial concluded, March 23, 1990, was eighteen months. Eighteen times $1075 equals $19,350. Thus, reading paragraphs A. 12 and A. 13 together, and reading them so as to support rather than undermine the judgment of the trial court; see *Lauer* v. *Redding Zoning Commission*, 220 Conn. 455, 469–70, 600 A.2d 310 (1991); I conclude that the trial referee, although not willing to make the undifferentiated finding sought by paragraph A. 12, did make the discrete and differentiated finding sought by paragraph A. 13.

I, therefore, read this record to reflect a finding by the trial referee that the defendant had been unjustly enriched by the amount of the fair rental value of the

ing as one of the claims of the plaintiff in this case: 2. The plaintiff claims that his actions in providing all the funds to purchase and close upon the property, allowing the defendant to be the legal owner of one half of the equity, and paying the carrying costs of the property through the end of the trial and thereafter unjustly enriches the defendant to the expense and detriment of the plaintiff." The trial referee ruled that while this claim was made by the plaintiff, the plaintiff did not sustain his burden of proving such a claim.

In support of this ruling, the trial referee concluded that while the plaintiff made the actual mortgage payments on the property, the defendant's contributions to the property, in the form of time, labor, funds for carpeting, and her own credit so as to enable the parties to qualify for a mortgage, offset these payments so that the defendant, at least until the time of the termination of the engagement, was not unjustly enriched by the plaintiff's mortgage payments. This conclusion is not inconsistent with the trial referee's finding of unjust enrichment in paragraph A. 13. The plaintiff's claim under paragraph C. 2 concerned the plaintiff's payment of all funds to purchase the property and subsequent mortgage payments, while the plaintiff's claim under paragraph A. 13 concerned the defendant's use and occupancy of the property after the engagement was terminated.

property she occupied for the period of time between the termination of the parties' engagement and the end of the trial. That finding, however, is improper as a matter of law because it is based on a flawed conception of the rights and obligations of the parties as joint owners of the property in question.

The plaintiff and the defendant purchased the property as joint tenants with rights of survivorship. As such, each had a right to the use and possession of the entire property. See 4A R. Powell, Real Property (1986) § 603. The common law "imposed no duty on an occupying cotenant to account (compensate) the [other cotenants] for his own use . . . of the property . . . ." Id., § 604 [1]. Thus, under the common law, absent ousting the other cotenants from the property, a fellow cotenant could occupy the entire property without any obligation to pay the fair rental value of the property to his other cotenants since he owned the entire piece of property. Conversely, under the common law a "cotenant who pays more than his share to preserve the property is entitled to contribution from the others." Id., § 604 [2]. "An independent action is permitted a cotenant . . . who pays more than his share of property taxes or mortgage payments." Id.

Thus, although the plaintiff claimed that the defendant had been unjustly enriched by virtue of the plaintiff's payments on the mortgage, the trial referee explicitly rejected that claim as a matter of fact. See footnote 1, supra. I do not agree, however, with the conclusion of the trial referee that the defendant had been unjustly enriched to the extent that she owed the plaintiff an obligation to pay the fair rental value of the property.

The record is clear as to how the trial referee determined damages of unjust enrichment in paragraph A. 13. The parties stipulated that the fair rental value

of the property was $1075 per month. Since the damages figure was based solely on that fair rental value figure, namely, eighteen months times that fair rental value, and since as a matter of law the plaintiff was not entitled to any rental payments from the defendant, as a joint owner of the property, based solely upon the defendant's occupancy of the property, the basis of the unjust enrichment award was legally incorrect. Furthermore, the plaintiff moved back into the house in early 1989, after having left in September, 1988, as the separate opinion of Justice Shea rightly notes. The only period of potential unjust enrichment, therefore, is from September, 1988, when the plaintiff left, until early 1989, when he returned.

That does not mean, however, that the plaintiff would not be entitled to an award of unjust enrichment based upon proper criteria. General Statutes § 52-404 (b) states that "[w]hen two or more persons hold property as joint tenants . . . if one of them occupies . . . the property in greater proportion than the amount of his interest in the property, any other party . . . may bring an action for accounting or for use and occupation against such person and recover such sum or value as is in excess of his proportion."[2] Although § 52-404 (b) does not require a cotenant who does not occupy the property to establish ouster in order to be entitled to

---

[2] General Statutes § 52-404 provides: "ACCOUNTING BETWEEN COEXECUTORS AND COTENANTS. (a) A residuary legatee, when all or any part of his legacy is withheld from him by an executor, may bring an action for an accounting against the executor for the recovery thereof. An executor, who is also residuary legatee, when all or any part of his legacy is withheld from him by his coexecutor, may bring an action for an accounting against his coexecutor for the recovery thereof.

"(b) When two or more persons hold property as joint tenants, tenants in common or coparceners, if one of them occupies, receives, uses or takes benefit of the property in greater proportion than the amount of his interest in the property, any other party and his executors or administrators may bring an action for an accounting or for use and occupation against such person and recover such sum or value as is in excess of his proportion."

an accounting, the nonoccupying cotenant must establish more than that he is a cotenant out of occupancy. See *Lerman* v. *Levine,* 14 Conn. App. 402, 410–13, 541 A.2d 523 (*Borden, J.,* dissenting), cert. denied, 208 Conn. 813, 546 A.2d 281 (1988).

"[O]ur case law has uniformly considered the accounting statute to incorporate the complete array of equitable principles. See *Vesce* v. *Lee,* 185 Conn. 328, 441 A.2d 556 (1981); *Seidel* v. *Seidel,* 110 Conn. 651, 657, 149 A. 394 (1930); *Brady* v. *Brady,* 86 Conn. 199, 206–208, 84 A. 925 (1912); *Brady* v. *Brady,* 82 Conn. 424, 426, 74 A. 684 (1909). A cotenant's 'due proportion' under General Statutes § 52-404 (b) 'cannot be determined without a consideration of all the equities between the parties, arising out of the dealings with respect to the land in question.' *Brady* v. *Brady,* 82 Conn. 424, 426, 74 A. 684 (1909). Of critical importance in considering those equities is whether there was an intent or understanding between the cotenants that a payment or contribution would be due. See *Vesce* v. *Lee,* supra, 336–38; *Neumann* v. *Neumann,* 134 Conn. 176, 178–79, 55 A.2d 916 (1947); *Seidel* v. *Seidel,* supra, 656–58; *Brady* v. *Brady,* 86 Conn. 199, 206–208, 84 A. 925 (1912)." *Lerman* v. *Levine,* supra, 411–12.

In the present case, the plaintiff left the premises voluntarily in September, 1988, and returned in early 1989. There is also no evidence in this record of any intention or understanding on the part of any of the parties that the defendant was expected to pay use and occupancy to the plaintiff during the period of his voluntary absence.

At the same time, however, it must be noted that, after the plaintiff brought this lawsuit, in mid-November, 1988, the defendant knew that the plaintiff was claiming some payment for the defendant's continued occupancy during the period the plaintiff was

no longer living there. Thus, the matter of unjust enrichment should be remanded to the trial court for a new trial on whether the defendant was unjustly enriched during the period from midNovember, 1988, to early 1989, when the plaintiff returned to the premises. That determination, moreover, must be made under "all the equities between the parties, arising out of the dealings with respect to the land in question." *Brady* v. *Brady,* 82 Conn. 424, 426, 74 A. 684 (1909).

SHEA, J., dissenting in part. I join Justice Borden in agreeing with part I of the majority opinion and in disagreeing with part II of that opinion, which remands the case for further articulation by the trial referee of the basis for his finding of unjust enrichment.

The adoption by the trial referee of paragraph A. 13 of the plaintiff's motion to correct is an unambiguous finding of unjust enrichment from the time the parties separated until the conclusion of the trial. The rejection of paragraphs A. 12 and C. 2 of the motion, which state broader claims of unjust enrichment, does not undercut the finding of unjust enrichment for the more limited period delineated in paragraph A. 13. A remand for further articulation of the finding of unjust enrichment, therefore, is unnecessary.

I disagree with Justice Borden, however, over his proposal for a new trial with respect to the entire unjust enrichment claim, because it is broader in scope than necessary. The issue of liability for unjust enrichment during the period following the breakup of the parties' engagement has expressly been determined in favor of the plaintiff by the finding in paragraph A. 13 and, with respect to the preceding period, the remainder of the finding implicitly resolves the unjust enrichment issue in favor of the defendant. There is no need to relitigate the liability issue with respect to those periods, as those determinations of the trial referee are

adequately supported by the evidence and have not been found erroneous on appeal. Unlike personal injury actions tried before juries, in which we have regarded the issues of liability and damages as interwoven and have ordered new trials on both issues, even when the ground for reversal involves only damages; see *Bleau* v. *Ward,* 221 Conn. 331, 338 n.5, 603 A.2d 1147 (1992); those issues are separable in this case, which does not involve a jury trial. Accordingly, a remand should be limited to a determination of the amount of unjust enrichment that has accrued since September 30, 1988, when the parties separated.

I agree with Justice Borden that the trial referee's finding of unjust enrichment in the amount of $19,350 for the period after September 30, 1988, is flawed. There are two obvious defects. First, the calculation of the amount was based on the eighteen months that elapsed from the time of separation until the conclusion of trial at a monthly fair rental value of $1075. The defendant, however, owned a one-half interest in the property and, therefore, if she is liable in any amount because of her exclusive occupancy of the property, she would not have been obliged to pay a use and occupancy charge of more than one half of the fair rental value of the property. Furthermore, the finding indicates that the plaintiff, after moving out in September, 1988, "returned in early 1989 and resides with the defendant in the home." The defendant's liability for use and occupancy of the entire property must be limited to the period of approximately five months during which she held exclusive possession. Second, the finding wholly ignores the undisputed fact that the plaintiff has made all of the payments for the mortgage and taxes since the separation of the parties, from which the defendant has derived equal benefit. The trial referee refused to make such a finding despite undisputed testimony to that effect. The defendant has

not challenged on appeal the plaintiff's factual claim that he has made all the payments for the mortgage, taxes and insurance since October, 1988, from his own funds. By adopting paragraph A. 11 of the motion to correct the trial referee found that "from October 1988 and thereafter, the plaintiff did not intend any of those payments to be gifts of any kind to the defendant." These oversights of the trial referee should be corrected in any further proceedings.

I agree with Justice Borden that whether the defendant is liable for a use and occupancy charge, even for the several months that she held exclusive possession of the property, should be decided on the basis of equitable principles. The finding states that "[f]riction arose and increased, leading to the plaintiff leaving in September 1988." The circumstances under which the plaintiff left the premises should be considered in deciding whether the defendant would be liable for use and occupancy during the relatively short period that the plaintiff was absent.

Accordingly, I dissent from part II of the majority opinion.