## LOCATION REALTY, INC. *v.* GENERAL FINANCIAL SERVICES, INC.
### (SC 17232)

Sullivan, C. J., and Borden, Katz, Palmer and Vertefeuille, Js.

Argued November 22, 2004—officially released May 31, 2005

*Richard P. Weinstein,* with whom was *Nathan A. Schatz,* for the appellant (plaintiff).

*James W. Oliver,* with whom was *Suzanne LaPlante,* for the appellee (defendant).

BORDEN, J. The plaintiff, a corporation licensed as a real estate broker, appeals[1] from the summary judgment of the trial court denying its claim for a real estate commission because the plaintiff's president was not also licensed as a broker. The plaintiff claims that the trial court improperly granted the defendant's motion for summary judgment. We agree, although our reasoning is different from that of the trial court, and, accordingly, we reverse the judgment of the trial court.

The plaintiff, Location Realty, Inc., brought this action against the defendant, General Financial Services, Inc., to recover a real estate commission. The defendant moved for summary judgment and the trial court granted the motion and rendered judgment for the defendant.

The following facts and procedural history are undisputed. The plaintiff brought this action against the defendant to recover a real estate commission that the plaintiff claimed it had earned pursuant to a listing agreement effective November, 1998, in connection with certain land located on the Berlin Turnpike in Berlin. The plaintiff alleged that the listing agreement complied with General Statutes § 20-325a (b),[2] and

[1] The plaintiff appealed from the judgment of the trial court to the Appellate Court, and we transferred the appeal to this court pursuant to General Statutes § 51-199 (c) and Practice Book § 65-1.

[2] General Statutes § 20-325a (b) provides: "No person, licensed under the provisions of this chapter, shall commence or bring any action with respect to any acts done or services rendered after October 1, 1995, as set forth in subsection (a), unless the acts or services were rendered pursuant to a contract or authorization from the person for whom the acts were done or services rendered. To satisfy the requirements of this subsection any contract or authorization shall: (1) Be in writing, (2) contain the names and addresses of the real estate broker performing the services and the name of the person or persons for whom the acts were done or services rendered, (3) show the date on which such contract was entered into or such authorization given, (4) contain the conditions of such contract or authorization, (5) be signed by the real estate broker or the real estate broker's authorized agent, (6) if such contract or authorization pertains to any real property, include

included the lease of the subject property. The plaintiff alleged further that, during the term of the listing agreement, the defendant had entered into a lease agreement with a tenant, namely, CVS, by virtue of which the defendant is liable to the plaintiff for a commission in the amount of approximately $145,500.

The listing agreement between the parties covered the period from November, 1998, to December 31, 2000. The defendant and CVS entered into their lease on August 26, 1999. The plaintiff has had a real estate broker's license, issued pursuant to chapter 392 of the General Statutes; General Statutes §§ 20-311 through 20-329ff; since August 27, 1990,[3] including the time period of the listing agreement and the lease, and including the time at which this action was brought in June, 2002. During that time period, the plaintiff's president was Michael C. O'Brien,[4] who was licensed as a real

the following statement: 'THE REAL ESTATE BROKER MAY BE ENTITLED TO CERTAIN LIEN RIGHTS PURSUANT TO SECTION 20-325a OF THE CONNECTICUT GENERAL STATUTES', and (7) be signed by the person or persons for whom the acts were done or services rendered or by an agent authorized to act on behalf of such person or persons, pursuant to a written document executed in the manner provided for conveyances in section 47-5, except, if the acts to be done or services rendered involve a listing contract for the sale of land containing any building or structure occupied or intended to be occupied by no more than four families, the listing contract shall be signed by the owner of the real estate or by an agent authorized to act on behalf of such owner pursuant to a written document executed in the manner provided for conveyances in section 47-5."

Although the legislature has amended § 20-325a (b) since the time that the listing agreement here was in effect, the amendments involved technical changes not relevant to this appeal. Accordingly, references herein to § 20-325a (b) are to the current revision of the statute.

[3] General Statutes § 20-312 (b) provides that any corporation holding a real estate broker's license "shall designate in its application the individual who is to serve as broker under the license." In the present case, the plaintiff's designated broker at the time of the listing agreement and the plaintiff's alleged services thereunder was Phil Knecht.

[4] The only other officer of the plaintiff was Michael O'Brien's brother, John O'Brien, who was not licensed as a real estate broker, but who did not actively participate in the plaintiff's real estate brokerage business.

estate salesperson, but was not licensed as a real estate broker until October, 2001. Furthermore, O'Brien actively participated in the plaintiff's real estate brokerage business; indeed, he was instrumental in securing the listing agreement in question, and signed it on behalf of the plaintiff.

On the defendant's motion for summary judgment, the defendant argued that: (1) General Statutes § 20-312 (b)[5] requires that, if a corporation is licensed as a real estate broker, every officer who actively participates in its brokerage business must be licensed as a broker; (2) General Statutes § 20-325a (a)[6] provides that no person not duly licensed may commence or bring an action for a commission; (3) the plaintiff was not duly licensed because O'Brien lacked a broker's license; and (4) therefore, the plaintiff's action must fail as a matter of law. The plaintiff countered that the statutory scheme did not permit the court, as opposed to the

[5] General Statutes § 20-312 provides in relevant part: "(a) No person shall act as a real estate broker or real estate salesperson without a license issued by the commission, unless exempt under this chapter. . . .

"(b) No partnership, association or corporation shall be granted a real estate broker's license, unless every member or officer of such partnership, association or corporation who actively participates in its real estate brokerage business holds a license as a real estate broker . . . ."

Although the legislature has amended § 20-312 since the time that the listing agreement here was in effect, the amendments involved technical changes not relevant to this appeal. Accordingly, references herein to § 20-312 are to the current revision of the statute.

[6] General Statutes § 20-325a (a) provides: "No person who is not licensed under the provisions of this chapter, and who was not so licensed at the time the person performed the acts or rendered the services for which recovery is sought, shall commence or bring any action in any court of this state, after October 1, 1971, to recover any commission, compensation or other payment with respect to any act done or service rendered by the person, the doing or rendering of which is prohibited under the provisions of this chapter except by persons duly licensed under this chapter."

Although the legislature has amended § 20-325a (a) since the time that the listing agreement here was in effect, the amendments involved technical changes not relevant to this appeal. Accordingly, references herein to § 20-325a (a) are to the current revision of the statute.

real estate commission, collaterally to invalidate the plaintiff's broker's license in the context of this private action for a commission otherwise properly earned. Thus, as presented to the trial court, the case turned on the intersection of two statutory sections, namely, §§ 20-312 and 20-325a (a). The trial court agreed with the defendant and granted its motion for summary judgment. This appeal followed.

In this court, the parties reiterated the same statutory contentions that they had presented to the trial court, namely, their arguments relying on the effect of the intersection of §§ 20-312 and 20-325a (a). After oral argument before this court, however, we issued an order to the parties directing them to file supplemental briefs on the following issue: "What effect, if any, does General Statutes (Rev. to 1997) § 20-325a (c) have on the issue presented in this appeal?" General Statutes (Rev. to 1997) § 20-325a (c) provides: "Nothing in subsection (a) of this section or subdivisions (2) to (6), inclusive, of subsection (b) of this section shall prevent any licensee from recovering any commission, compensation or other payment in respect to acts done or services rendered, if such person has substantially complied with subdivisions (2) to (6), inclusive, of subsection (b)[7] of this section and it would be inequitable to deny such recovery." We conclude that this statutory provision requires the reversal of the trial court's judgment.[8]

---

[7] The question of whether the listing agreement substantially complied with subdivisions (2) through (6) of § 20-325a (b) is not at issue in this appeal.

[8] Although the plaintiff did not claim, either in the trial court or initially in this court, that General Statutes (Rev. to 1997) § 20-325a (c) applied, we nonetheless conclude that consideration of the statute is appropriate under the plain error doctrine. "It is plain error for a trial court to fail to apply an applicable statute, even in the absence of the statute having been brought to its attention by the parties." *Genovese* v. *Gallo Wine Merchants, Inc.*, 226 Conn. 475, 480 n.6, 628 A.2d 946 (1993). Application of the plain error doctrine is warranted in this case because the statute is plainly applicable and both parties have had the opportunity to address it in their supplemental briefs.

This case presents a question of statutory interpretation over which we have plenary review.[9] "The process of statutory interpretation involves a reasoned search for the intention of the legislature. . . . In other words, we seek to determine, in a reasoned manner, the meaning of the statutory language as applied to the facts of [the] case, including the question of whether the language actually does apply. In seeking to determine that meaning, we look to the words of the statute[s] [themselves], to the legislative history and circumstances surrounding [their] enactment, to the legislative policy [they were] designed to implement, and to [their] relationship to existing legislation and common law principles governing the same general subject matter. . . . *State* v. *Courchesne*, 262 Conn. 537, 577, 816 A.2d 562 (2003)." (Internal quotation marks omitted.) *New Haven* v. *Bonner*, 272 Conn. 489, 493–94, 863 A.2d 680 (2004).

---

Language substantially similar to that contained in subsection (c) of General Statutes (Rev. to 1997) § 20-325a is now contained in subsection (d) of the current revision of § 20-325a.

[9] "In *State* v. *Courchesne*, [262 Conn. 537, 567–78, 816 A.2d 562 (2003)], this court explained that, as part of the judicial task of statutory interpretation, we would not follow the so-called plain meaning rule, which operates to preclude the court, in certain cases, from considering sources in addition to the statutory text in order to determine its meaning. We are cognizant that, subsequent to our decision in *Courchesne*, [General Statutes § 1-2z] has legislatively overruled that part of *Courchesne* in which we stated that we would not require a threshold showing of linguistic ambiguity as a precondition to consideration of sources of the meaning of legislative language in addition to its text. *State* v. *Courchesne*, supra, 577. [General Statutes § 1-2z] provides: The meaning of a statute shall, in the first instance, be ascertained from the text of the statute itself and its relationship to other statutes. If, after examining such text and considering such relationship, the meaning of such text is plain and unambiguous and does not yield absurd or unworkable results, extratextual evidence of the meaning of the statute shall not be considered. . . . The present case does not implicate the limitation imposed upon our statutory review by [§ 1-2z] because the applicable statutory text is not plain and unambiguous." (Citations omitted; internal quotation marks omitted.) *New Haven* v. *Bonner*, 272 Conn. 489, 493–94 n.5, 863 A.2d 680 (2004).

We first address the plaintiff's claim that the trial court improperly rendered summary judgment on the ground that the plaintiff was not duly licensed as a broker and, therefore, was barred from bringing this action by § 20-325a (a).[10] We conclude that, considering only §§ 20-312 and 20-325a (a), as the trial court did, the plaintiff was not duly licensed.[11] We also conclude, however, as our following discussion indicates, that that fact alone is insufficient to deny the plaintiff the right to recover the commission it claims.

It is useful to begin our inquiry with a general overview of the statutory scheme. That scheme recognizes two types of licensed providers of real estate services: brokers, defined in General Statutes § 20-311 (1),[12] and salespersons, defined in § 20-311 (2).[13] Both are subject

---

[10] We consider this claim first because, if the plaintiff is correct in its assertion, there would be no need to consider the application of General Statutes (Rev. to 1997) § 20-325a (c).

[11] We disagree, however, with the trial court's view that it was obliged to decide whether the plaintiff's license was "automatically void . . . ."

[12] General Statutes § 20-311 (1) defines " '[r]eal estate broker' " or " 'broker' " as "(A) any person, partnership, association, limited liability company or corporation which acts for another person or entity and for a fee, commission or other valuable consideration, lists for sale, sells, exchanges, buys or rents, or offers or attempts to negotiate a sale, exchange, purchase or rental of, an estate or interest in real estate, or a resale of a mobile manufactured home, as defined in subdivision (1) of section 21-64, or collects or offers or attempts to collect rent for the use of real estate, and (B) any person, partnership, association, limited liability company or corporation employed by or on behalf of the owner or owners of lots or other parcels of real estate, at a stated salary, upon commission, upon a salary and commission basis or otherwise to sell such real estate, or any parts thereof, in lots or other parcels, and who sells or exchanges, or offers, attempts or agrees to negotiate the sale or exchange of, any such lot or parcel of real estate . . . ."

Although the legislature has amended § 20-311 (1) since the time that the listing agreement here was in effect, the amendments involved technical changes not relevant to this appeal. Accordingly, references herein to § 20-311 (1) are to the current revision of the statute.

[13] General Statutes § 20-311 (2) defines " '[r]eal estate salesperson' " or " 'salesperson' " as "a person affiliated with any real estate broker as an independent contractor or employed by a real estate broker to list for sale, sell or offer for sale, to buy or offer to buy or to negotiate the purchase or sale or exchange of real estate, or to offer for resale, a mobile manufactured

to the licensing provisions of the real estate commission, which is part of the department of consumer protection (department). See generally General Statutes §§ 20-311 and 20-312. One critical distinction between the two types of licensed providers is disclosed by General Statutes (Rev. to 1997) § 20-314 (d) (1) and (2).[14] That statute then provided that an individual could be

home, as defined in subdivision (1) of section 21-64, or to lease or rent or offer to lease, rent or place for rent any real estate, or to collect or offer or attempt to collect rent for the use of real estate for or on behalf of such real estate broker, or who offers, sells or attempts to sell the real estate or mobile manufactured homes of a licensed broker, or acting for another as a designated seller agent or designated buyer agent, lists for sale, sells, exchanges, buys or rents, or offers or attempts to negotiate a sale, exchange, purchase or rental of, an estate or interest in real estate, or a resale of a mobile manufactured home, as defined in subsection (a) of section 21-64, or collects or offers or attempts to collect rent for the use of real estate, but does not include employees of any real estate broker whose principal occupation is clerical work in an office, or janitors or custodians engaged principally in that occupation . . . ."

Although the legislature has amended § 20-311 (2) since the time that the listing agreement here was in effect, the amendments involved technical changes not relevant to this appeal. Accordingly, references herein to § 20-311 (2) are to the current revision of the statute.

[14] General Statutes (Rev. to 1997) § 20-314 (d) provides: "(1) Each applicant for a real estate broker's license shall, before being admitted to such examination, prove to the satisfaction of the Real Estate Commission: (A) (i) That he has been actively engaged for at least two years as a licensed real estate salesperson under the supervision of a licensed real estate broker in this state, (ii) that he has successfully completed a course approved by the commission in real estate principles and practices of at least thirty classroom hours of study, (iii) that he has successfully completed a course approved by the commission in real estate appraisal consisting of at least thirty classroom hours of study, and (iv) that he has successfully completed a course approved by the commission consisting of at least thirty classroom hours as prescribed by the commission, or (B) that he has equivalent experience or education as determined by the commission.

"(2) Each applicant for a real estate salesperson's license shall, before being admitted to such examination, prove to the satisfaction of the Real Estate Commission (A) that he has successfully completed a course approved by the commission in real estate principles and practices consisting of at least thirty classroom hours of study, or (B) that he has equivalent experience or education as determined by the commission."

licensed as a salesperson upon successful completion of an approved course in real estate practices and principles of at least thirty classroom hours, or the equivalent experience or education as determined by the real estate commission. General Statutes (Rev. to 1997) § 20-314 (d) (2). The statute also then provided, however, that an individual could be licensed as a broker only if he met four requirements: (1) he had been actively engaged for at least two years as a salesperson under the supervision of a broker; (2) he had successfully completed an approved course of at least thirty classroom hours of real estate practices and principles; (3) he had successfully completed an approved course in real estate appraisal of at least thirty classroom hours; and (4) he had successfully completed a course, approved by the real estate commission, of at least thirty classroom hours "as prescribed by the commission . . . ."[15] General Statutes (Rev. to 1997) § 20-314 (d) (1). It is apparent, therefore, that a broker's license requires more education and experience, and more demanding qualifications, than a salesperson's license.

In addition, licenses for either status may be granted "only to persons who bear a good reputation for honesty, truthfulness and fair dealing and who are competent to transact the business of a real estate broker or real estate salesperson in such manner as to safeguard the interests of the public." General Statutes § 20-314 (a). Furthermore, there are continuing education requirements for both brokers and salespersons. General Statutes § 20-319 (b). Finally, the department may suspend or revoke any such license for a variety of acts of misconduct, including "a violation of any provision

---

[15] The real estate commission has the authority to waive these four requirements if it determines that the applicant "has equivalent experience or education . . . ." General Statutes (Rev. to 1997) § 20-314 (d) (1) (B).

of this chapter or any regulation adopted under this chapter. . . ." General Statutes § 20-320 (13).[16]

With this background in mind, we turn to the first particular question involved in this appeal, namely, the applicability of § 20-325a (a). We begin with the language of the statutes involved.

Section 20-312 (a) provides in relevant part: "No person shall act as a real estate broker . . . without a license issued by the commission . . . ." Section 20-312 (b) provides in relevant part: "No . . . corporation shall be granted a real estate broker's license, unless every . . . officer of such . . . corporation who actively participates in its real estate brokerage business holds a license as a real estate broker . . . ." This language strongly suggests that a corporation's broker's license is valid only if every officer of the corporation who actively participates in its brokerage business is licensed as a broker.

Section 20-325a (a), which addresses the question of civil actions brought to recover commissions, provides: "No person who is not licensed under the provisions of this chapter, and who was not so licensed at the time the person performed the acts or rendered the services for which recovery is sought, shall commence or bring any action in any court of this state, after

---

[16] General Statutes § 20-320 provides in relevant part: "The [real estate] commission may temporarily suspend or permanently revoke any license issued under the provisions of this chapter and, in addition to or in lieu of such suspension or revocation, may, in its discretion, impose a fine of not more than two thousand dollars at any time when, after proceedings as provided in section 20-321, the commission finds that the licensee has by false or fraudulent misrepresentation obtained a license or that the licensee is guilty of any of the following . . . (13) a violation of any provision of this chapter or any regulation adopted under this chapter. . . ."

Although the legislature has amended § 20-320 since the time that the listing agreement here was in effect, the amendments involved technical changes not relevant to this appeal. Accordingly, references herein to § 20-320 are to the current revision of the statute.

October 1, 1971, to recover any commission, compensation or other payment with respect to any act done or service rendered by the person, the doing or rendering of which is prohibited under the provisions of this chapter except by persons duly licensed under this chapter." Although, as the plaintiff points out, the first part of the sentence refers only to a "person who is not licensed," the end of the sentence refers to "persons *duly* licensed under this chapter." (Emphasis added.) General Statutes § 20-325a (a). In our view, the entire sentence must be read as a whole. Thus, the reference at the end of subsection (a) to "persons duly licensed" strongly suggests that the adverb "duly" also applies to the reference at the beginning of subsection (a) to "person . . . licensed . . . ." General Statutes § 20-325a (a). Thus, the language of this section suggests that a licensee may only bring an action for a commission if it is duly licensed.

This analysis brings us back to § 20-312 (b). Just as the entire sentence of § 20-325a (a) must be read as a whole, § 20-325a (a) must be read together with § 20-312 (b). Reading the two provisions together, we conclude that their language strongly suggests that a corporate licensed broker, whose president was actively involved in its brokerage business but was not licensed as a broker, was not duly licensed within the meaning of § 20-325a (a).

This conclusion is supported by the legislative history of chapter 392 of the General Statutes. That history indicates that the primary purpose of the legislation was the protection of the public, and that the legislature considered the requirement that all active members of a corporate or partnership licensee be themselves licensed to be central to that purpose, so as to avoid the possibility that persons not licensed as brokers could nonetheless combine in a partnership or corporation that would be so licensed.

What is now chapter 392 of the General Statutes was first enacted in 1953, as Public Acts 1953, No. 410. It required, for the first time in this state, the licensing of real estate brokers and salespersons. In presenting the bill to the House of Representatives, Representative Norman K. Parsells began by stating that "the purpose of this bill is to insure to the public to the extent possible that it is dealing with honest, truthful and competent real estate brokers and salesmen." 5 H.R. Proc., Pt. 6, 1953 Sess., p. 2381. Representative Parsells further stated: "We tried to draft a bill which would protect the public but at the same time would not keep any honest and intelligent person out of the real estate business." Id., p. 2383. Representative Parsells specifically addressed the purpose of what is now § 20-312 (a) and (b): "Section 3 [of Public Acts 1953, No. 410] requires the people to obtain a license after October 1, 1953. It also requires that all active members of a partnership and officers of a corporation must be licensed, because we wanted to prevent group evasion of this law." Id., p. 2384.

Finally, it is significant that the real estate commission itself has recognized the importance of the requirements of § 20-312 (b). In a declaratory ruling issued on July 19, 2002, the real estate commission interpreted that section as follows: "It is our experience that real estate brokerage firms are managed, directed and controlled by their officers. Accordingly, we apply the unambiguous language of the statute to require that each officer of a brokerage business be individually licensed as a broker, or being the designated broker.

"We further require that each owner who actively engages in the management or control of a brokerage business be individually licensed as a broker or being the designated broker. We recognize that some brokerage firms are publicly traded entities. We believe that a passive investment interest of a shareholder is not

the 'active participation' contemplated by the statute." Connecticut Real Estate Commission, In re: Activities of Real Estate Salespersons, Declaratory Ruling, July 19, 2002.

We are not persuaded by the plaintiff's argument that, because the entire statutory scheme of chapter 392 of the General Statutes grants extensive regulatory powers to the real estate commission, the trial court could not go behind the plaintiff's license so as to deny the plaintiff the right to bring this action. We acknowledge the real estate commission's extensive powers. That grant of authority, however, does not, in our view, trump the language and purpose of §§ 20-312 (b) and 20-325a (a), when read together, particularly when § 20-325a (a) specifically addresses the right to bring an action for compensation for services rendered.

We conclude, therefore, that but for the possible application of General Statutes (Rev. to 1997) § 20-325a (c), the plaintiff would be barred from bringing this action. The "but for," however, significantly alters the analysis of this case.

General Statutes (Rev. to 1997) § 20-325a (c) provides in relevant part: "Nothing in subsection (a) of this section . . . shall prevent any licensee from recovering any commission, compensation or other payment in respect to any acts done or services rendered, if . . . it would be inequitable to deny such recovery." The language of this section squarely applies to subsection (a) of § 20-325a, which is the provision that bars an action when the licensee was not duly licensed at the time of the rendering of the services. That language provides, in effect, that, despite the fact that a licensee may not have been duly licensed, it may not be denied the right to recover if it would be inequitable to do so. Furthermore, we note that, in contrast to the language of subsection (a) of § 20-325a, which speaks in terms of

the right to "*commence or bring*" an action; (emphasis added); subsection (c) of General Statutes (Rev. to 1997) § 20-325a provides that nothing in subsection (a) "shall prevent any licensee from *recovering*" its claimed compensation. (Emphasis added.) Both the linguistic reference to equity, and the linguistic distinction between bringing or commencing an action and recovering on such an action, strongly suggest that the right of a plaintiff who is not duly licensed nonetheless to recover must be determined based on all of the facts and circumstances of the case.

This suggestion is buttressed by the legislative history of § 20-325a (c). That provision was enacted in 1994 by Public Acts 1994, No. 94-240, as part of a legislative proposal drafted by a task force comprised of representatives of the department of consumer protection, the real estate commission and the Connecticut Association of Realtors. Conn. Joint Standing Committee Hearings, Insurance and Real Estate, 1994 Sess., p. 90. The legislative history indicates that the proposal was brought forth in response to certain decisions of this court that strictly construed the requirements of § 20-325a (b), namely, the formal requirements of a listing agreement, and denied brokers the right to recover for failures of strict compliance therewith. See, e.g., *M.R. Wachob Co.* v. *MBM Partnership*, 232 Conn. 645, 658–62, 656 A.2d 1036 (1995); Conn. Joint Standing Committee Hearings, supra, p. 91. That history indicates that the task force that drafted the legislation considered that the strict construction of subsection (b) of § 20-325a had resulted in some cases of "unjust enrichment." Conn. Joint Standing Committee Hearings, supra, p. 91. This history, in turn, also suggests that the question of recovery, despite a failure to comply strictly with subsection (a) of § 20-325a, must be determined on the basis of all of the facts and circumstances of the case. See, e.g., *Crowell* v. *Danforth*, 222 Conn. 150, 158, 609 A.2d 654 (1992)

("[u]njust enrichment requires a factual examination of the circumstances and of the conduct of the parties" [internal quotation marks omitted]).

It necessarily follows from this discussion that a corporate broker licensee, whose president was not licensed as a broker, may not be denied its right to recover a commission otherwise earned solely because of that licensing failure. Its right to recover must be gauged, instead, under all of the facts and circumstances of the case and whether it would be inequitable, in light of those facts and circumstances, to deny it the right to recover. One of those facts and circumstances is, of course, that the licensee may not have been duly licensed; but that fact alone is not sufficient to deny recovery. It follows, further, that the trial court's grant of summary judgment in this case was improper.

The judgment is reversed and the case is remanded for further proceedings according to law.

In this opinion KATZ, PALMER and VERTEFEUILLE, Js., concurred.

SULLIVAN, C. J., dissenting. The majority concludes that the plaintiff, Location Realty, Inc., was not duly licensed as a real estate broker and, therefore, would be barred by General Statutes § 20-325a (a)[1] from bringing its action for a real estate broker's commission against the defendant, General Financial Services, Inc., but for the provisions of General Statutes (Rev. to 1997) § 20-325a (c). The majority further concludes that,

---

[1] General Statutes § 20-325a (a) provides: "No person who is not licensed under the provisions of this chapter, and who was not so licensed at the time the person performed the acts or rendered the services for which recovery is sought, shall commence or bring any action in any court of this state, after October 1, 1971, to recover any commission, compensation or other payment with respect to any act done or service rendered by the person, the doing or rendering of which is prohibited under the provisions of this chapter except by persons duly licensed under this chapter."

under § 20-325a (c), a licensee who is not "duly licensed" is not barred from recovering a commission if denying such recovery would be inequitable under the facts and circumstances of the case. I agree that the plaintiff was not duly licensed,[2] but do not agree that § 20-325a (c) applies to persons or entities that are not duly licensed. Because I would conclude that the plaintiff is barred from bringing this action, I dissent.

General Statutes (Rev. to 1997) § 20-325a (c) provides: "Nothing in subsection (a) of this section or subdivisions (2) to (6), inclusive, of subsection (b) of this section shall prevent any licensee from recovering any commission, compensation or other payment in respect to any acts done or services rendered, if such person has substantially complied with subdivisions (2) to (6), inclusive, of subsection (b) of this section and it would be inequitable to deny such recovery." The majority recognizes that § 20-325a (a) bars a person who is not "licensed," i.e., is not duly licensed, from bringing an action for a commission, but argues that a licensee who is not duly licensed may, nevertheless, recover a commission under § 20-325a (c) if, under the "facts and circumstances" of the case, it would be inequitable to preclude recovery, because § 20-325a (c) specifically

---

[2] I also agree with the majority's implicit determination that this court has jurisdiction to determine that the plaintiff was not duly licensed for purposes of § 20-325a (a), even though the real estate commission has original jurisdiction over "licensure and issuance, renewal, suspension or revocation of licenses concerning the real estate business." General Statutes § 20-311b (b) (2). I do not believe, as the trial court found, that the effect of the court's determination that the plaintiff was not duly licensed for purposes of § 20-325a (a) was to void the plaintiff's license for the relevant annual periods. The effect was simply to bar the plaintiff from bringing an action to recover a commission. Any determination that the license was void, which, as the plaintiff points out, would have consequences beyond barring an action for a commission pursuant to § 20-325a (a); see, e.g., General Statutes § 20-325 (engaging in business of real estate broker without license is punishable by fine and imprisonment); must, in my view, be made by the real estate commission.

provides that § 20-325a (a) will not bar such recovery by a licensee. In my view, however, it is inconsistent for the majority to conclude, on the one hand, that the word licensed, as used in the first clause of § 20-325a (a), means duly licensed, that is, licensed in accordance with the provisions of chapter 392, and to conclude, on the other hand, that the word licensee, as used in § 20-325a (c), does not mean a person duly licensed under chapter 392, but means a person who has obtained a license, whether or not in accordance with the governing statutes. Moreover, if the legislature had intended to allow an improperly licensed person to recover a commission when it enacted § 20-325a (c), it would have specified that such an action would be allowed only if the person had substantially complied with the licensing provisions, just as it specified that such an action is allowed only if a person has substantially complied with § 20-325a (b). I find it highly unlikely that the legislature intended that a plaintiff who failed to satisfy the technical requirements of § 20-325a (b) could recover a commission only by establishing *both* that (1) the listing contract was in substantial compliance with subdivisions (2) through (6) of that provision *and* (2) it would be inequitable to deny recovery, but that a plaintiff who failed to satisfy the fundamental licensing requirements of chapter 392 could recover a commission simply by establishing that it would be inequitable to deny recovery under some unspecified set of facts and circumstances.

I would conclude that, by including the reference to § 20-325a (a) in § 20-325a (c), the legislature merely intended to underscore that, by its very terms, § 20-325a (a) does not bar a licensee, i.e., a person who is duly licensed, from recovering a commission. I recognize that, under this interpretation, the reference to subsection (a) in subsection (c) is gratuitous because nothing in § 20-325a (a) suggests that a licensee is

barred from recovering a commission, regardless of whether the licensee has complied with § 20-325a (b). Nevertheless, confronted with a choice between a reading of § 20-325a (c) that renders the reference to subsection (a) gratuitous and a reading that both gives less weight to the basic licensing requirements of chapter 392 than to the technical listing agreement requirements of § 20-325a (b) and imports into subsection (c) a notion that is at odds with the basic statutory scheme, namely, that persons who are not duly licensed may enjoy the privileges granted to duly licensed persons, I would choose the former reading.

This conclusion is supported by the legislative history of § 20-325a (c). During joint committee hearings on the proposed legislation, Larry Hannafin, representing the department of consumer protection and the Connecticut real estate commission, specifically stated that "the proposed changes expand [*§ 20-325a (b)*] so that if a broker in a real estate transaction has substantially complied with the provisions of this chapter, or this section, the broker will be permitted to pursue their claims for payment of the licensee['s] fees in our court system." (Emphasis added.) Conn. Joint Standing Committee Hearings, Insurance and Real Estate, 1994 Sess., p. 91. Thus, immediately after referring to "this chapter," Hannafin corrected himself by saying "or this section" to clarify that the new legislation affected only "this section," meaning § 20-325a (b). He did not suggest that the legislation expanded the right to bring an action when the licensing requirements of chapter 392 had not been met. Hannafin also stated that "[r]ight now under [§ 20-325a (b)], if as much as a date [in] the listing contract or authorization to ask for another is deleted from that listing agreement [the broker is barred] from going to court to seek payment of the commission and often this has resulted in unjust enrichment to various sellers of properties." Id. In my view, this legislative

history clearly indicates that § 20-325a (c) was intended solely to ameliorate what had been the draconian results of failing to comply strictly with the technical requirements of § 20-325a (b).

Indeed, the majority recognizes that § 20-325a (c) was enacted in response to judicial decisions holding that the failure to comply strictly with § 20-325a (b) barred the right to recover a commission and that the "the task force that drafted the legislation considered that the strict construction of [*§ 20-325a (b)*] had resulted in some cases of 'unjust enrichment.' " (Emphasis added.) It then concludes that this fact "suggests that the question of recovery, despite a failure to comply strictly with *subsection (a)* of § 20-325a, must be determined on the basis of all of the facts and circumstances of the case." (Emphasis added.) The fact that the legislature intended that a person should not automatically be deprived of a commission for failure to comply strictly with the formal requirements for a listing agreement set forth in § 20-325a (b) does not mean that the legislature intended that a person should not automatically be deprived of a commission for failure to comply with the basic statutory licensing requirements.[3]

In summary, I do not agree with the majority's conclusion that, under § 20-325a (c), a person who has failed to comply with the licensing provisions of chapter 392

---

[3] I am perplexed by the majority's argument that the linguistic distinction between "bringing or commencing" an action for a commission in § 20-325a (a) and "recovering" a commission in § 20-325a (c) "strongly suggest[s] that the right of a plaintiff who is not duly licensed nonetheless to recover must be determined based on all of the facts and circumstances of the case." The recovery allowed by § 20-325a (c) is clearly recovery in an action commenced or brought in a court of law. While § 20-325a (a) and (b) bar commencement of such an action and, therefore, recovery, under specified facts and circumstances, § 20-325a (c) permits recovery and, necessarily, the commencement of an action, under specified facts and circumstances. Thus, I cannot perceive the significance of the linguistic distinction relied on by the majority.

may be permitted to bring an action for the recovery of a commission if, under the facts and circumstances of the case, it would be inequitable to deny recovery. I would conclude that § 20-325a (a) acts as an absolute bar to the bringing of such an action by a person who is not duly licensed under the provisions of chapter 392 and that § 20-325a (c) does not apply to such persons. Because the plaintiff was not duly licensed, I believe that this action for a commission is barred. Accordingly, I dissent.